## ELIZABETH RICHARDS

*v.*

## JOHN N. MILLER.

1. WILL—*devise—words to pass real estate.* The words, "I give, devise, and bequeath to my heirs-at-law the remainder of my estate," are sufficient to embrace and pass real estate left by the testator.

2. SAME—*meaning of word "heirs."* The rule rigidly adhered to by the courts is, that the words employed by a testator in his will, will be presumed to have been used in their strict and primary sense, unless the context shows them to have been used in a different sense. When not thus explained, their legal and technical meaning will be enforced. Thus, the word *heirs,* unexplained by the context, will be held to mean the persons appointed by law to succeed to the estate in case of intestacy.

3. PAROL EVIDENCE—*to explain who meant by "heirs-at-law."* Where a residuary devise in a will was in these words: "I give, devise, and bequeath to my *heirs-at-law* the remainder of my estate : " *Held,* that parol evidence of the instructions given by the testatrix to the scrivener who drafted the will, for the purpose of explaining who she·meant by the words heirs-at-law, was not admissible.

4. SAME—*to identify heirs, etc.* But proof of the amount and nature of the fund to be distributed, to show whether personalty or realty, and the names of the persons who sustained such relations to the testatrix as would constitute them heirs-at-law, is not only proper, but necessary to an order of distribution. But such proof does not raise a latent ambiguity to justify proof of the declarations of the testatrix, made at the writing of the will, to show who she considered her heirs.

5. DEVISE—*to heirs-at-law—construction.* When gifts by will to heirs-at-law are made to them *simpliciter,* the persons to take and the proportions must be determined by the statute of descents and distribution. So, where a testatrix, after directing the payment of her funeral expenses and debts, and certain pecuniary legacies, provided in her will as follows : " I give, devise, and bequeath to my heirs-at-law the remainder of my estate," and she died, leaving a husband, and brothers, sisters, and descendants of brothers and sisters, but no children, father, or mother : *Held,* that her husband, being an heir-at-law, was entitled to one-half of the real estate left by the testatrix, under such clause, or the surplus of the proceeds of its sale to pay debts and legacies which was held to be realty under the will ; and this, notwithstanding a prior specific bequest to him.

6. SAME. This case is distinguished from *Pitney* v. *Brown,* 44 Ill. 363. In that case the fund was directed to be "equally divided" between A and

the heirs of B, and the court there held that A and each of the heirs of B took *per capita*, and not *per stirpes*. In that case the gift was not to a class, as in this, to be ascertained by reference to the statute, but to certain individuals, as if personally named. When the words "equally," "share and share alike," or "to be equally divided" are used in a will, they mean a division *per capita*.

7. WILL—*interpretation—what law governs.* Where a will designates a particular class or description of persons as taking under it, the proper persons who are entitled to take must be ascertained by the law of the place where the will is made, and the testator is domiciled. Thus, if a testator should bequeath personal estate to his "heirs-at-law," the law of his domicil will determine the persons entitled to take under such description.

8. SAME—*as to realty.* The law of the place where real estate devised is situate, governs in the construction and interpretation of the will. Thus, if a residuary devise, under which is included land or money arising from its sale treated as realty, is made to the "heirs-at-law" of the testatrix without designation by name, or words showing a different intention, such realty will pass to the heirs-at-law of the testatrix, as in case of intestacy, according to the statute of the State in which the real estate is situated.

9. DEVISE—*realty—money when so treated.* Even a direction in a will to sell land for a particular purpose does not indicate an intention to convert real into personal estate *to all intents*, so that the surplus of the proceeds will pass under a residuary bequest of personalty. Every conversion, however absolute, will be deemed a conversion for the purpose of the will only, unless the testator distinctly indicates a different intention.

10. SAME—Where a will, by its terms, gave no direction for the sale of real estate, and created no charge upon the land for the payment of legacies, but, after directing the payment of debts and personal expenses, contained this clause: "I give, devise, etc., the remainder of my estate:" *Held,* that if the right to sell real estate embraced in the residuary devise to pay legacies were conceded, the legacies would be a charge by implication only, resulting from a deficiency of personal assets; and the right to sell would be limited to the necessity, and the surplus of the proceeds, after satisfying the debts and legacies, would retain the character of real estate.

11. SAME. In such case, if the county court should direct the sale of the whole of the real estate for the payment of debts and legacies, it will be presumed that the whole was ordered to be sold because not susceptible of division without injury to the estate, and such sale will not convert the surplus proceeds into personal estate, but it will be treated in the final distribution as realty.

12. "HEIR" *defined—in devise.* An heir is one who inherits or takes from another by descent, as distinguished from a devisee, who takes by will. He is one upon whom the law casts the estate immediately upon the death of

the owner. When property is devised to the testator's heirs-at-law, without other designation, it passes as in case of intestacy.

APPEAL from the Circuit Court of Adams County ; the Hon. JOSEPH SIBLEY, Judge, presiding.

Francis Miller made her last will and testament, first directing the payment of her funeral expenses and just debts, after which she made various specific and pecuniary bequests to various persons, and to religious associations. Among these was the following :

" 2. After the payment of my funeral expenses and all my debts, I give, devise, and bequeath unto my beloved husband, John N. Miller, $2,000 in money, one good bed and bedding, one cow, his choice of the horses, and the buggy and harness."

Joseph Turner, who drafted the will, was named as executor. About a year after making the will the testatrix died. The executor, after qualifying, found the personal assets insufficient to pay the debts and pecuniary bequests, and applied to the county court of Adams County for an order to sell the real estate of which the testatrix died seized, being her homestead of about 100 acres. The court ordered the sale of the whole of it, as prayed for. On report and settlement with the county court, there was $4,177.17 in the hands of the executor for distribution according to the terms of .the will. The executor asked for an order directing the distribution of this surplus to the brothers and sisters, and the descendants of the deceased brothers and sisters of the testatrix. The court ordered him to pay one-half of the sum to John N. Miller, the husband of the testatrix, and the other half as asked by the executor. From this order Elizabeth Richards, a sister of the testatrix, appealed to the circuit court.

On the trial in the circuit court, the order of the county court was affirmed, and an appeal taken to this court.

Messrs. BROWNING & BUSHNELL, for the appellant.

Messrs. WHEAT & MARCY, for the appellee.

Mr. JUSTICE THORNTON delivered the opinion of the Court:

The testatrix directed the payment of her funeral expenses and debts; and after their discharge she made bequests to her husband and other persons, and several religious societies. She then added this residuary clause:

" I give, devise, and bequeath to my heirs-at-law, the remainder of my estate."

Upon her death she left surviving her a husband, and brothers and sisters, and their descendants, but no children, and no father or mother.

The personal property was insufficient to pay the debts and specific legacies, and an order was obtained from the proper court to sell the real estate. The whole of the estate was sold, and upon a settlement over four thousand dollars remained in the hands of the executor for distribution.

Who are meant by the words " heirs-at-law," the husband as well as the brothers and sisters, or only the latter?

We must first ascertain the character of the residuum. Was the real estate, by the sale, converted into personal property?

The will gave no compulsory direction—indeed, none whatever—for the sale of the land; and as the application was made to the court for license, the presumption must be indulged, that the whole was ordered to be sold because it was not susceptible of division, and to avoid injury to the parties interested. The mere order to sell the whole, because it was not susceptible of division without prejudice to the heirs, certainly could not convert the land into money out and out. If so, then the court had the power to change the nature of the bequest and defeat the intention of the testatrix.

The land was devised by the residuary clause. The words " the remainder of my estate" embrace it. After the application of the personal assets, in discharge of the debts and legacies, they being primarily liable for their payment, the heirs-

at-law might have taken the land, by satisfaction of the remaining unpaid debts and legacies. It would be strange, then, if a plain devise of land could be changed into a bequest of personality by the order of the court, and thus a change of devisees effected.

The will gave no directions to sell or convert the real estate. The intention of conversion, then, can not be gathered from it. In express terms it created no charge upon the land for the payment of legacies. The language is: "After the payment of my funeral expenses and debts, I give, devise, etc." But conceding the right to apply the proceeds of the sale of the land in discharge of the specific legacies, they would only be an implied charge, resulting from a deficiency of personal assets, and not from the language of the will. The right to sell and apply the proceeds was, therefore, limited to the necessity which existed for the payment of the unpaid debts and legacies; and the land can not be regarded as converted out and out. The surplus will retain the character of realty so far as the charge does not extend.

Upon an examination of the authorities, it will be found that even a direction in a will to sell land for a particular purpose does not indicate an intention to convert real into personal property, to all intents, so that any surplus of the proceeds should pass under a residuary bequest of personalty. Much less reasonable is the conclusion of an intention to convert the land, in this case, when there is a devise of it and no direction to sell—no language indicating the intention that it should be converted into money, not even the declared intention that it should be so changed for the purposes of paying legacies. The charge upon it, if any existed, arose only by implication.

We cite a few of the authorities which sustain the view presented.

In *Maugham* v. *Mason,* 1 Ves. & B. 409, Sir William Grant said: "Properly speaking, nothing is the personal estate of the testator which was not so at his death. When there is nothing but a direction to sell land, with application

of the money to a particular purpose, and a subsequent bequest of the residue of the personal estate, I know of no case, in which it has been held, that the surplus, after the particular purpose is answered, forms part of the personal estate."

Mr. Cox, in his note to *Cruse* v. *Barley*, 3 Peere Williams, 22, says that the several cases upon this subject seem to depend upon whether the testator meant to give to the proceeds of the real estate the quality of personalty, *to all intents,* or only so far as respected the *purposes of the will;* and that unless he sufficiently declared his intention that the produce of the real estate should be taken as personalty, the surplus will result to the heir.

Mr. Jarman, in his work on Wills (vol. 1, p. 558), declares, that every conversion, however absolute, will be deemed to be a conversion for the purposes of the will only, unless the testator distinctly indicates a different intention.

Under the circumstances of the case at bar, the conversion of the land into money must be regarded as only for the purposes of the will ; and when they are satisfied, the money remained as land. 1 Jarman on Wills, 523 b. *et seq.*; *Smith* v. *McCrary*, 3 Iredell Eq. 204 ; *Acroyd* v. *Smithson*, 1 Bro. C. C. 503 ; *Roper* v. *Radcliffe*, 9 Mod. 167 ; *Cruse* v. *Barley*, 3 Peere Williams, 20 ; *Stonehouse* v. *Evelyn*, id. 252 ; *Chitty* v. *Parker*, 2 Ves. Jr. 271 ; *Berry* v. *Usher*, 11 Ves. Jr. 87 ; *Bourne* v. *Bourne*, 2 Hare, 35 ; *Wood* v. *Cone*, 7 Paige, 472 ; *Wright* v. *Trustees Meth. Epis. Church*, Hoffman, 205.

Is the husband an heir ? The statute unquestionably makes him such, when it says, that, upon certain contingencies, one-half of the real estate of the wife shall descend to him as his exclusive estate forever. An heir is one who inherits. He takes an estate in land from another by descent, as distinguished from a devisee, who takes by will. He is one upon whom the law casts the estate immediately upon the death.

It is strenuously objected, that the husband can not be regarded as an heir because the wife died testate ; and that the statute makes him an heir only in case of intestacy. The same objection would apply to the brothers and sisters who

are contesting the distribution of the surplus; for they could only be heirs-at-law, upon the death without children and without a will. This objection, too, amounts to the assumption, that the will has disposed of the land in a different manner from what the law would do.

The will devised the land, but made no designation of devisees by name. If the statutory rule should govern, then the money, regarded as land, must be distributed according to the statute; and the result would be as in the case of intestacy. The land was situated here; the testatrix had her domicil here; and the meaning of the will must be determined by reference to the law of descents as it exists in this State. Where the will gave the residue of the estate to the heirs-at-law, uncontrolled by any other words, the property must descend according to the law of the place where it is situated, and where the will is to be carried into effect.

The law of the domicil must govern as to the persons to take. 1 Jarman on Wills 1 and 2; 2 Green. Ev. Sec. 671; Story Con. Laws Sec. 479 e.

Judge Story says, when the will designates a particular class or description of persons, the proper persons who are entitled to take must be ascertained by the law of the place where the will is made and the testator is domiciled. Thus, if a testator should bequeath his personal estate to his "heir-at-law," the law of his domicil will determine the person entitled to take under such description.

If the testatrix had died intestate and without children, the statute would have distributed the real estate as follows: to the husband one-half, as his exclusive estate forever, and the balance to her parents, brothers, and sisters, and their descendants, giving to each of the parents a child's part, or to the survivor of them, if one be dead, a double portion; and if there be no parent, then to the brothers, and sisters, and their descendants. The same statute, by the aid of which we determine that the brothers and sisters are heirs-at-law, also makes the husband heir-at-law.

Can we, according to the rules of interpretation, and with

nothing in the context to aid, construe the words " heirs-at-law " in the popular sense ?   Can we say that next of kin were intended ?   To do so would be a bold advance toward overturning established rules.

The rule has been rigidly adhered to by all courts that a testator must be presumed to use the words in which he expresses himself, in their strict and primary sense, unless, from the context of the will, it appears that he has used them in a different sense.   The legal and technical meaning must be enforced when unexplained.

The word heir, when uncontrolled by the context, designates the person appointed by law to succeed to the real estate in question in case of intestacy.   2 Jarman on Wills, 1.

In *Rawson* v. *Rawson*, 52 Ill. 62, the above rule of interpretation was approved, and it was held, in construing the meaning of the words " heirs-at-law " that they designated the persons appointed by law to succeed to an estate, as in case of intestacy.   The case of *Baskin's Appeal*, 3 Penn., 304, was cited with approval.   In this case, it was decided that where a testator made a bequest to all his heirs equally, he intended such as could only be ascertained by a resort to the statute of distributions.

It was also held in *Rawson* v. *Rawson, supra,* that heirs-at-law, as used in a will, are such as are made so by statute, and are the persons upon whom the law casts the estate in case of intestacy ; and that a widow was an heir-at-law under the statute, inheriting from her husband.   The language of the statute, which gives one-half of the real estate of the husband to the wife is identical with that which gives one-half of the real estate of a *feme covert* to her husband.

We must, therefore, hold that the intention of the will was to include the husband as one of the heirs-at-law.

Is this intention controlled by the context ?   The prior bequest to him should not have that effect.   It has often occurred, that a testator has made special bequests to some of his heirs, and then bequeathed equally the residue of his estate to all of them.   Good reasons may often exist for such

disposition of an estate. Some of the heirs may have had larger advancements; the necessity may be greater to make more ample provision for one than another; or the love and affection which prompt the gift may be stronger in one case than another. The tie which linked together the husband and wife in this case was more sacred than the tie which bound her to her relatives. The better and kindlier feelings of the woman, and love enthroned in the heart of the wife, would prompt the gift to the husband, while only cold duty might induce the bestowal of any thing upon her next of kin. It would be most unreasonable to infer, from this fact alone, the exclusion of the husband from any benefit from the residuary clause. See *Ferguson and wife* v. *Stuart, Ex'r.,* 14 Ohio, 140.

It is also contended, that, even if the husband is one of the residuary legatees, he is not entitled to one-half of the residuum, and *Pitney* v. *Brown,* 44 Ill. 363, is cited as authority.

In that case the testator directed the fund "to be equally divided" between Brown and the children of Pitney. The court held that, while distribution *per stirpes* would be the most reasonable construction, the established rule must be adhered to, which, as laid down by Jarman, is, that if a bequest be made to my brother A and the children of my brother B, A takes only a share equal to that of one of the children of B. Vol. 2, 111. If B had three children, this would be a gift to be equally divided between the four persons. It is not a gift to a class, to be ascertained by reference to the statute, but a gift to certain persons, as if they were individually named. It is only necessary to find out the number of the children of B, and then the persons take *per capita,* and not *per stirpes.*

The words, too, "equally," or "share and share alike," or "to be equally divided," import an intention. When they are used in a will they mean a division *per capita.*

In the case before us there are no words indicating equality of division. The gift is to a particular class. We must invoke the aid of the statute to determine the persons who constitute the class. When invoked to ascertain the persons to

take, we must follow its provisions as to the quantity they shall take.

No complaint is made of the order of distribution, except that one-half of the residuum is given to the husband. Exclusive of him the heirs of the testatrix are sixteen in number, including a number of grand-nephews and nieces. An equal division was not, and ought not, to be made among them. Leaving out the husband, the other heirs do not take *per capita.* The descendants of the brothers and sisters who may be dead only inherit the shares which their parents would have received if living. Again, suppose one of the parents—the father—had survived, would he take only the one-seventeenth part, or a double portion, as provided by the statute? The question answers itself.

It seems to us, that when gifts by will to heirs-at-law are made to them *simpliciter,* the persons to take, and the proportions, must be determined by the statute of distributions.

In the view we have taken of this will, there was no error in refusing evidence of the instructions given to the scrivener. It is assumed that the will disposes of personalty only ; and, as the proof shows the fund to be distributed arose from the proceeds of the sale of the land, that by such parol evidence a latent ambiguity was raised, which might be removed by parol evidence of the declarations of the testatrix.

On the contrary, we think that the will disposed of the entire estate in as plain words as could be used, and the proof as to the character of the estate devised created no ambiguity, but rendered the intention more certain. The dispute was as to the meaning of the words " heirs-at-law." Before the order of distribution could be made, there must necessarily be proof of the amount and nature of the fund or property to be distributed, and of the names of the persons who sustained such relations to the testatrix as would constitute them heirs-at-law. This could not justify proof of the declarations of the testatrix at the time the will was written.

Under such a rule, the requirement that a will shall be in writing ; of the solemn attestation ; and the certain and endur-

ing character intended to be given to it would be wholly dispensed with and destroyed.

The judgment is affirmed.

*Judgment affirmed.*