McIlvaine, J.
The judgment in this ease was recorded some weeks since; at which time it was announced that no further report would be made ; but since that time, upon a suggestion from the bar, that the decision is not in harmony with *477 Jones v. Lloyd, 33 Ohio St. 572, the case has been placed in my hands for report.
The principal question in the case arises on the tenth item of the will, which reads as follows :
“ Tenth. I further order and direct that in case my said child should die without issue her surviving, then all and singular the estate so devised shall pass to and vest in my heirs-at-law.”
' The “ estate so devised ” consisted of personalty and non-ancestral realty, given by the ninth item to the child Mary, described by the testator “ as my sole and only heir. ” This child having died “ without issue her surviving,” the question is, To whom does the estate pass under this item of the will ? To the widow of the testator, or to his brother and sisters ? If the testator had died intestate and without children surviving him, this estate, both real and personal, would have passed to and vested absolutely in the widow, under the statute of descent and distribution of March 14, 1853, as amended April 16, 1862, and Marché, 1865. And under the same statute, if the testator had died childless and intestate, seized of an ancestral estate, the same would have passed to and vested in his brother and sisters, subject to a life estate in the widow. And again, if the testator’s daughter, Mary, had taken this property, upon the death of her father, either by inheritance or devise in fee absolute, the real estate, being, in her, ancestral property, would, upon her death, have passed to and vested in the brother and sisters of her father, subject to a life estate im, her mother, and the personalty, would have passed to her mother absolutely.
Such being the law of descent and distribution at the time the will was made, of which it must be presumed the testator had knowledge, it is quite improbable that he intended, in the event of Mary’s death without issue, that his brother and sisters should take as his heirs at law subject to a life estate in the widow. Such would have been the effect under the will and the statute of descent, as to the realty, if there had been no limitation over at Mary’s death; and it is quite plain, *478 that if the brother and sisters take at all under this clause in the will, they take absolutely.
And it is just as improbable, it seems to me, that the testator should have intended, inflexibly, to designate his brother and sisters by the phrase “ my legal heirs,” inasmuch as it is indisputable that the estate given by this clause in the will is greater than they, under any circumstances, could have inherited from him, his wife surviving; for by our statute of descent, as between the widow and the brothers and sisters of an intestate, oven in respect to ancestral estates, the widow is not wholly excluded from the inheritance.
We do not understand it to be disputed that the person or persons meant to bo designated in a will as “ my heirs-at-law,” are presumably such as would have inherited in case of intestacy ; save only, as is contended, the identification of heirs is to be made by the common law rules of descent, which excluded the widow.
In support of this contention it is claimed that a husband or wife relict, who succeeds to the estate of the deceased husband or wife, cannot, in a legal sense, be called an heir / and Gauch v. St. Louis M. L. Ins. Co., 88 Ill. 251, is relied on as authority. We think the case cited is directly against the claim. The point there decided is, that one taking a dower estate does not succeed to it as an heir; but Rawson v. Rawson, 52 Ill. 62, and Richards v. Miller, 62 Ill. 417, are approved, which hold that a wife or husband relict who takes under the law of descent takes as heir. A^nd such we think is the legal meaning of the word. Brower v. Hunt, 18 Ohio St. 811.
We readily concur in the proposition laid down in Jones v. Lloyd, supra, that the term heirs, when used in a will, is flexible, and should be so construed as to give effect to the manifest intention of the testator as ascertained by a due consideration of all the provisions of the will. But this proposition in no wise conflicts with the well established rule of construction, that technical words used in a will should have their strict technical meaning, unless it appears that the testator used them in some other and secondary sense.
By the will in Jones’ case, a husband had made provision *479 for the support of his widow, and in lieu of dower, and provided further, that if the widow should assert her right to dower and distribution under the statute., then certain property, which under the provision for her support would have vested in the widow, should be “ shared equally among my heirsplainly indicating that the person or persons meant by “ my heirs ” were others than the widow. The widow in that case would have been the heir of the husband had he died intestate ; but the court found from the context that the husband in his will had not used the word heirs in its technical sense, and so excluded the widow from the provision of the will made in favor of tlie heirs of the testator. An equally noticeable instance in which the word heirs has been used in a secondary sense is found in the fourth proposition in the syllabus of that ease, in which the words “ my heirs,” are construed to mean “ my next of kin, or heirs according to the statute of distribution exclusive of my wife ;” plainly showing, by reference to the statute of distribution of personal property, that the word is used in the sense of distributees. In this sense, the widow in this case would have succeeded as heir to all 'the personal property if her husband had died intestate and childless, or upon death of the child, if the husband had died intestate. But in no event could the brother and sisters have succeeded to the personalty under the statute of distribution, save only in case both wife and child had died before the testator, an event clearly not contemplated.
But there is nothing in this will, or the circumstances surrounding the testator at the time of making the will, that can justify a departure from the ordinary and legal meaning of the word. It is said, indeed, that the phrase “ heirs at law” is used in the plural number, while if the widow alone was intended, it should have been used in the singular. This is not enough : the term used refers to a class, and the class cannot be deprived of the bounty merely because the number of persons composing the class does not correspond with the number of the noun used in describing it; and as to this property, it is quite clear, that if the testator had died intestate, a condition necessary to *480 the relation of ancestor and heir, his brother and sisters would not have been classified among his heirs.
We think the unmistakable intention of the testator was, that this property, in case of the death of his daughter Mary without issue her surviving, should take the identical course under the will, it would have taken under the statute, if he had died childless and intestate. The time when the “ heirs at law” were to take under the will, was at the death of Mary without issue. The number of persons who might, at that time, stand in the relation of heirs to him in respect to this property, was unknown to him; hence the number of the noun used in designating the class does not indicate the testator’s intention as to the particular person or persons who should take under this clause in the will. If his widow was then living, she was the beneficiary intended. If she was not living at that time, his brother and sisters were the persons intended; and if they or their legal representatives were not living, his next of kin.

Judgment affirmed.