George S. Walker, Surviving Trustee, Defendant in Error, v. Elizabeth Frances Walker et al., Plaintiffs in Error.

Gen. No. 22,138.

1.  WILLS, § 459*—*when devise or legacy lapses at common law.* At common law a devise or legacy lapses where the devisee, or legatee dies before the death of the testator, except where made to a class and a member of the class dies before the testator, leaving other members of the class qualified to take.

2.  WILLS, § 493*—*what is purpose of section 11 of the Statute of Descent.* The purpose of section 11 of the Statute of Descent (J. & A. ¶ 4212), providing that whenever a devisee or legatee in any last will or testament, being a child or grandchild of the testator, shall die before the testator, and no provision shall be made for such contingency, the issue of such devisee or legatee shall take the estate the same as the devisee or legatee would have done had he survived the testator, is to prevent the lapsing of a devise or legacy to a child or grandchild of the testator.

3.  WILLS, § 494*—*when legacy to grandchild lapses and property distributed as intestate property.* Where a will provided that after the expiration of five years from the death of the testator the trustees of the estate should pay one-half of a certain sum to designated grandchildren, and ten years after his death the balance, share and share alike, *held* that it was the intention of the testator not to provide for the contingency of the death of a grandchild before his death and that a devise to such a grandchild lapsed and passed to the heirs of the testator as intestate property.

4.  WILLS, § 262*—*when husband is not heir of wife.* Where a wife dies leaving a husband and also a child, the husband is not an

Walker v. Walker, 207 Ill. App. 186.

heir of the wife if there is nothing in a will of the wife's father, who had previously died to indicate an intention that his son-in-law should obtain possession of any part of his estate.

5. WILLS, § 394*—*what is general rule in regard to vesting of personal legacies.* It is a general rule in regard to the vesting of personal legacies that if there are no independent bequests, but only a direction to pay at a future time, the vesting will be postponed until the time of payment has arrived.

6. WILLS, § 390*—*when personal legacy vests at once.* Where payment of a personal legacy or distribution is deferred for the convenience of the fund, the gift vests at once.

7. WILLS, § 391*—*when vesting of legacies is postponed until time of division.* It must be deemed the intention of a testator to postpone the time of payment of personal legacies for the personal benefit of the legatees and to provide against any improvidence on the part of the legatees so as to postpone the vesting of the legacies until the time for division, where the estate is a large one and there is a small bequest to the widow, together with small annuities to her and a servant, and bequests aggregating six per cent. of the estate are set aside for grandchildren, and the estate is then to be divided into six equal parts by the trustees, and a distribution of one-half of these parts is directed to be made at the end of five years and the balance at the end of ten years, and one of the legatees was later adjudicated a spendthrift.

8. WILLS, § 226*—*when intention of testator will be given effect in construing will.* In construing wills the court will endeavor to give effect to the true intention and meaning of the testator, if this can be done without violating some well-established and positive rule of law, and such intention is to be ascertained from a consideration of the will and all of its parts.

9. WILLS, § 433*—*when decree for construction of will is not erroneous as warranting confiscation of estate by trustee.* A decree in a suit for the construction of a will providing that the trustee shall distribute the estate in cash or in kind, or partly in cash or kind, "as may seem to said trustee to be for the best interest of the estate," *held* not objectionable as warranting a confiscation of the estate, which consisted of stocks and bonds, in that it gave the trustee uncontrolled discretion to distribute the estate in cash or in kind, and if he decided to distribute the estate in cash it might amount to a confiscation, as his action would be subject to control of the court under such decree.

Error to the Circuit Court of Cook county; the Hon. THOMAS G. WINDES, Judge, presiding. Heard in the Branch Appellate Court

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

at the March term, 1916.    Affirmed in part, reversed in part and remanded with directions.    Opinion filed July 11, 1917.    Rehearing denied July 23, 1917.

R. KOENIG, for plaintiff in error Irene DuVernet Rabell.

WILLIAM H. GRUVER, for coplaintiffs in error Edwin Walker, Jr. and George S. Walker.

GERALD TURNBULL, for plaintiffs in error Charles Foley, individually and as conservator, and Earl Foley.

GEORGE C. OTTO, for plaintiff in error Chicago Title & Trust Company, as conservator, etc.

SCOTT, BANCROFT, MARTIN & STEPHENS, for Frederick Whiting; JOHN E. MACLEISH, of counsel.

GEORGE H. KRIETE, for defendant in error.

MR. PRESIDING JUSTICE O'CONNOR delivered the opinion of the court.

Edwin Walker died testate April 27, 1910.  His will was duly admitted to probate and afterwards a bill was filed for the construction of certain provisions of the will.  A decree was entered, to reverse which this writ of error is prosecuted.

All the property disposed of by the will is personal property.  After making certain specific bequests to the widow, amounting to $6,000, the will provides: "I give, devise and bequeath all of the rest, residue and remainder of my estate,  *  *  *  to Dr. William Dougall,  *  *  *  and to my son, George S. Walker,  *  *  *  to have and to hold the same in trust, nevertheless, for the following purposes, viz.:"

The will then provides for the payment of all debts and directs that in addition to the $6,000 the widow be paid out of the income of the estate $1,800 per year in monthly payments, and further directs that monthly payments be made to Mary Redmond, a servant of the family.

The will then contains the following provisions:

"3rd. My said trustees shall keep my estate, coming into their hands or possession (except as aforesaid), together for the period of five years from the date of my death, during which time they shall manage and control the same and every part thereof, and conduct any business, at their discretion, for the benefit of my estate; they shall have full power to make investments in interest bearing securities or income producing property, and to change such investments when made; to buy, sell and convey property at such time or times as they may think best, to collect all interest and income and generally to do what in their judgment will be the best for my estate; and at the end of said five years my said trustees shall make provision for the payments as aforesaid to my said wife, Elizabeth Frances, and to the said Mary Redmond, out of income and profit, from a fund which they shall set aside and invest for that purpose, and after making such provision and setting aside said fund, and after setting aside the sum of seventy-five hundred ($7,500) dollars, for the three children of my deceased daughter Hettie Foley, my said trustees shall make an estimate of the value of my remaining estate, and divide the same into six equal portions, and pay and deliver one-half of one of said six portions to my daughter Catherine Dougall, wife of Dr. Dougall, if she be living at the time, and if she be not living at that time, then to pay and deliver the same to her child or children surviving at the time of my death in equal portions; to pay one-half of another of said six portions to my daughter Minnie Whiting, wife of Frederick Whiting, if she be living at the time, and if she be dead, then to pay said one-half that would go to her, to her child or

children surviving at the time of my death, in equal portions; to pay one-half of fifteen thousand dollars, being the sum of seventy-five hundred dollars, to Cecil Foley, Earl Foley and Reginald Foley, the now surviving children of my deceased daughter Hettie, who was the wife of Charles Foley, to be divided equally between them; to pay one-half of another of said six portions to my son Edwin Walker, Jr., if he be living at the time, and if he be dead, then to pay the same to his child or children surviving at the time of my death, share and share alike; to pay one-half of another of said six portions to my son John H. Walker, if he be living at the time, and if he be dead, then to pay the same to his child or children surviving at the time of my death, share and share alike; to pay one-half of another of said six portions to my son Charles Walker, if he be living at the time, and if he be dead, then to pay the same to his child or children surviving at the time of my death, share and share alike; to pay one-half of the remaining one to the remaining one of the six portions to my son George S. Walker, if he be living at the time, and if he be dead, then to pay the same to his child or children surviving at the time of my death, share and share alike.

"4th. All of the balance of my estate after making provision for payments aforesaid, and making the payments hereinbefore mentioned, as herein directed, shall be kept together and managed by my said trustees in such manner as in their opinion will be for the benefit of my estate until the expiration of the period of ten years from the date of my death at which time, (the expiration of ten years from the date of my death) if my wife Elizabeth Frances and the said Mary Redmond be living, so that the provision for payment to them or either of them shall be kept up, as hereinbefore provided, then my said trustees, after making provision for the payments to them or to the survivor of them, if one be dead, so as to keep up the monthly payments, so long as either of them may be living, and after taking out seventy-five hundred dollars for the

three children aforesaid of my deceased daughter Hettie Foley, then my said trustees shall divide my estate that is then remaining (except the amount invested in making provision for the monthly payments and except the sum taken out, as aforesaid) into six equal parts, and shall pay, convey and deliver one of said six parts to my said daughter, Catherine, wife of said Dr. Dougall; and pay, convey and deliver another of said six parts to my said daughter Minnie, wife of said Frederick Whiting; and pay, convey and deliver to Cecil, Earl and Reginald Foley, the now surviving children of my said deceased daughter Hettie, the said seventy-five hundred dollars, share and share alike; and pay, convey and deliver to my son Edwin Walker, Jr., another of said six parts; and pay, convey and deliver to my said son John H. Walker, another of said six parts; and pay, convey and deliver to my son Charles Walker another of said six parts; and pay, convey and deliver to my son George S. Walker the last remaining of said six parts; and if at the expiration of said ten years my said daughter Catherine or my said daughter Minnie, or any of the said children of my said deceased daughter, Hettie, or my said son Edwin Walker, Jr., or my said son John H. Walker, or my said son Charles Walker or my said son George S. Walker, be dead, and should die without having received his or her part of my estate as aforesaid, then my said trustee shall pay, convey and deliver the share that would otherwise go to such deceased person, to his or her heirs at law, according to the statute of descent in the State of Illinois.

"5th. Upon the death of my wife Elizabeth Frances, the payment of one hundred and fifty ($150) dollars per month to her shall cease, and upon the death of Mary Redmond, the payment of twelve ($12) dollars per month to her, as hereinbefore provided shall cease, and after the death of both of them, if it be after the expiration of said ten years after the date of my death, my said trustees shall divide all of the residue and remainder in their hands or under their

control, and that part of my estate heretofore set apart and held for the purpose of producing money to make the payments of said monthly sums out of the income and profit thereof, and all then remaining income, profit, property and increase, into six equal parts, and said six parts shall be then by said trustees, paid, conveyed and delivered, one to my said daughter Catherine Dougall, if she be living, and if not, then to her heirs at law, one to my said daughter Minnie Whiting, if she be living, and if not, then to her heirs at law, one to my said son Edwin Walker, Jr., if he be living, and if not, then to his heirs at law, one to my said son John H. Walker, if he be living, and if not, then to his heirs at law, one to my said son Charles Walker, if he be living, and if not, then to his heirs at law, and the remaining one-sixth to my said son George S. Walker, if he be living, and if not, then to his heirs at law. The share going to the heirs at law of any of those last named shall be divided among such heirs according to the statute of descent in the State of Illinois.''

Cecil Foley, a grandchild of the testator, died intestate twenty-two days prior to the death of the testator, without issue, leaving him surviving as his only heirs at law his father and two brothers, and the contention is that the court erred in holding that the legacy to him did not lapse, but passed to his heirs at law.

At common law a devise or legacy always lapses where the devisee or legatee dies before the death of the testator. There is an exception to this rule where the devise or bequest is made to a class and a member of the class dies before the testator, leaving other members of the class qualified to take. To prevent the lapsing of a devise or legacy to a child or grandchild of the testator, section 11 of our Statute of Descent (J. & A. ¶ 4212) was enacted. *Pirrung v. Pirrung,* 228 Ill. 441. The record discloses that Cecil Foley at the time the will was executed was about eighteen years of age. He was a grandson of the testator. The

Walker v. Walker, 207 Ill. App. 186.

will provides that five years after the death of the testator the trustee shall pay one-half of $15,000, or $7,500, to Cecil, Earl and Reginald Foley, "to be divided equally between them," and nothing is said as to what should be done in case any of the Foleys should then be dead. In paragraph four it is provided that ten years after the death of the testator the balance of the $15,000, or $7,500, be paid to Cecil, Earl and Reginald Foley, share and share alike, and if any of the said Foleys are then dead the trustees are directed to pay the same to their heirs. From the foregoing it clearly appears that the testator did not have in mind the death of any of the Foleys occurring before his death and made no provision for such a contingency. As Cecil Foley died before the death of the testator and left no children or grandchildren, the legacy to him lapsed and passed to the heirs of the testator as intestate property. *Pirrung v. Pirrung, supra.*

It is next contended that the court erred in holding that Frederick Whiting is entitled as an heir of Minnie Whiting to a part of her legacy, under the fourth paragraph of the will. Minnie Whiting, daughter of the testator, died June 14, 1912, leaving her surviving her husband, Frederick Whiting, and her daughter, Irene DuVernet Rabell. The fourth paragraph of the will provides that the trustees, at the expiration of ten years from the death of the testator, after setting aside certain amounts, shall divide the balance into six equal parts, "and shall pay, convey and deliver one of said six parts to my said daughter Minnie, wife of said Frederick Whiting." It is then provided: "and if at the expiration of said ten years  *  *  *  my said daughter Minnie  *  *  *  be dead, and should die without having received  *  *  *  her part of my estate as aforesaid, then my said trustees shall pay, convey and deliver the share that would otherwise go to" her

to "her heirs at law, according to the statute of descent in the State of Illinois." The fourth paragraph of section 1 of the Statute of Descent (J. & A. ¶ 4202) provides that where the deceased leaves a surviving husband and also a child, as in this case, such husband shall receive as his absolute property one-third of the personal estate of the intestate; and from this it is argued that Frederick Whiting is entitled to one-third of Minnie Whiting's legacy.

Where a wife dies leaving a husband and also a child, the husband of the decedent is not an heir of the wife. *Gauch v. St. Louis Mut. Life Ins. Co.*, 88 Ill. 251. But where a wife dies leaving no child or descendants thereof, but leaves a surviving husband, the husband is an heir of the decedent. *Rawson v. Rawson*, 52 Ill. 62; *Richards v. Miller*, 62 Ill. 417. In the colloquial or popular sense, a surviving husband is not ordinarily an heir of his deceased wife. *Smith v. Winsor*, 239 Ill. 567; *Black v. Jones*, 264 Ill. 548.

In the case at bar, as Minnie Whiting left her surviving a daughter, Mrs. Rabell, it follows that her surviving husband, Frederick Whiting, is not an heir of his deceased wife within the technical or colloquial meaning of that term; and unless, upon a reading of the will, it can be said that it was the intention of the testator to include the said Frederick Whiting as an heir at law of his deceased wife, then he is not entitled to any portion of the bequest made to Minnie Whiting. Upon a careful examination of the will, we find nothing that would indicate that the testator intended that any persons, except his direct descendants, should share in his estate. There is nothing tending to show an intention that any son-in-law of his should obtain possession of any part of his estate.

A further contention is made by the plaintiff in error, Chicago Title & Trust Company, as conservator of John H. Walker, spendthrift, that the court should

have found that the bequests ordered to be distributed at the end of ten years, and at final distribution, vested at the time of the testator's death in the legatees, and that each of such legatees had "alienable and indestructible interests."

By the fourth paragraph of the will, the testator, after making provision for certain payments, directed that, at the expiration of ten years from the date of his death, the estate be divided into six equal parts, and one of said parts be paid to each of his children, naming them; and further provided if any of his children "be dead, and should die without having received his or her part, * * * then my said trustees shall pay, convey and deliver the share that would otherwise go to such deceased person, to his or her heirs at law, according to the statute of descent in the State of Illinois." Similar language appears in paragraph 5 in reference to the final distribution. It is argued that the words "heirs at law" are words of limitation and not of substitution, and therefore each of the testator's children mentioned in paragraphs 4 and 5 was vested at the time of the testator's death with an alienable interest in the bequest that would be distributed at the end of ten years and subsequently.

It is a general rule in regard to the vesting of personal legacies, if there are no independent bequests, but only a direction to pay at a future time, the vesting will be postponed until the time of payment has arrived. *Scofield v. Olcott*, 120 Ill. 362; *Knight v. Pottgieser*, 176 Ill. 368. But if such payment or distribution is deferred for the convenience of the fund, as where a future gift is postponed to let in some other interest, as bequests to trustees to pay debts, the gift vests at once. *Scofield v. Olcott, supra; Knight v. Pottgieser, supra.* The question then is, was the payment of the legacies deferred for reasons personal to the legatees, or for the benefit of the estate to let in some prior interest?

The estate consisted of property worth more than $250,000. There was a bequest of $6,000 to the widow, together with small annuities to her and a servant, and bequests of $15,000 to be set aside for the Foley children. After these provisions the estate was to be divided into six equal parts, and a distribution of one-half of these parts was directed to be made at the end of five years. Similar provisions were made for distribution at the end of ten years. It therefore clearly appears that the time of distribution was not postponed for the convenience of the fund or property, as there was ample funds to take care of the specific bequests, but that the time of payment was postponed for the personal benefit of the legatees. The testator intended to provide against any improvidence of his legatees, and it seems that, so far as John Walker was concerned, the provision was well founded, as it appears from the record that he has subsequently been adjudicated a spendthrift.

Furthermore, it is fundamental that in construing wills the constant effort of the court is to give effect to the true intention and meaning of the testator, if this can be done without violating some well-established and positive rule of law, and such intention is to be ascertained from a consideration of the will and all its parts. It frequently occurs that established rules and precedents of a technical character are of little or no value in ascertaining the intention of the testator. *Black v. Jones, supra.* If the contention of counsel for the conservator of John J. Walker were sustained, i. e., that John H. Walker, at the time of the death of the testator, had an alienable interest in the property directed to be distributed at the end of ten years, then he would have the right at any time after the death of the testator to entirely dispose of his interest in such portion of the estate.

Counsel for the conservator of John H. Walker also contend that the decree is erroneous in providing that

the trustees distribute the estate in cash or in kind, or partly in cash or kind, "as may seem to said trustees to be for the best interest of the estate." It is argued that, under this provision, the trustees would have uncontrolled discretion to distribute the estate in cash or kind, and if they decided to distribute the estate in cash, it consisting entirely of stocks and bonds, it might amount to a confiscation. We think this contention is not warranted by the language of the decree. If the trustees should decide to distribute the estate in cash and a sale of the personal property would practically amount to a confiscation, we think their action would be subject to control by the court under the decree.

The decree of the Circuit Court of Cook county is affirmed in part, reversed in part and the cause remanded with directions to modify the decree in accordance with the views herein expressed.

*Affirmed in part, reversed in part and remanded with directions.*