Bertha M. Rolofson, Complainant and Appellee, v. Charles S. Rolofson, Trustee under the Last Will and Testament of John B. Rolofson, Deceased, et al., Defendants. John J. Rolofson, Appellant.

Gen. No. 8,112.

1. WILLS—*general rule of construction.* The paramount rule in construing wills is to ascertain from the language of the whole will the testator's intention and then to give it effect unless contrary to public policy or some rule of law.

2. WILLS—*meaning of "heirs" when used alone.* In case the son of a testator has died leaving a son and widow, the word "heirs," used by the testator to describe those to whom he left his estate, but to which he added no descriptive words to show they took under the statute of descent, held not to include the widow of the testator's son.

Appeal by defendants from the Circuit Court of DeWitt county; the Hon. GEORGE A. SENTEL, Judge, presiding. Heard in this court at the April term, 1927. Reversed and remanded with directions. Opinion filed October 31, 1927.

LEONARD W. INGHAM and HERRICK & HERRICK, for appellant.

W. F. GRAY and L. O. WILLIAMS, for appellee.

MR. PRESIDING JUSTICE SHURTLEFF delivered the opinion of the court.

This suit involves a construction of the will of John B. Rolofson, deceased, and the determination of the beneficiaries of the trust fund into which the estate was converted under the terms of the will. The testator died June 30, 1922. He left a last will and testament, which had been duly probated, the essential provisions of which were as follows:

"Item One. I order and direct that my executors hereinafter named, pay all my just debts and funeral expenses as soon after my decease as conveniently may be, from my personal estate.

"Item Two. After the payment of all funeral expenses and just debts, I give and bequeath to my daughter, Arabella Rolofson, two thousand dollars ($2,000).

"Item Three. I hereby give and devise to my sons, John J. Rolofson and Charles S. Rolofson, all of the real property of which I may die seized, in trust, however, for the following uses and purposes and none other: for the period commencing at the date of my decease and ending on the 1st day of March, next, after one year after the date of my said decease, they shall control said real estate and collect the rents and profits thereof and pay out of said sum the taxes, insurance and repairs of said property and the cost of administration of my estate.

"Item Four. On the 1st day of March next after one year after the date of my decease and from thence until the provisions of this trust have been fully and completely paid unto my executors as herein stated, I hereby give and devise unto John J. Rolofson and Charles S. Rolofson the land hereinafter in this item described, in trust for the following uses and purposes and none other: They shall, as soon as practical after the expiration of the 1st of March next after one year from the date of my decease, sell at public vendue and after first advertising in some newspaper of general circulation in the County of DeWitt, in the State of Illinois, for four consecutive weeks, the time, place and terms of such sale, at the east door of the courthouse or some other suitable place in the City of Clinton, County of DeWitt and State of Illinois, as follows:"

The will then describes the real estate to be sold and proceeds:

"My executors will, as soon as practical after the making of said sales, execute to the purchaser or purchasers of said land, or any part thereof, good and sufficient deed conveying the premises so sold to the

purchaser or purchasers thereof, terms of said sale being that the purchaser or purchasers shall pay ten per centum of his purchase price to my executors on day of sale, and the balance of the purchase price upon the completion of said sale and the transfer of deed or deeds of conveyance to the property.

"Item Five. I hereby direct my executors to convert all of my personal and mixed property into money and with the remainder of the money derived from the sale of real estate mentioned in item four, be equally divided among my children, that is to say, I do hereby give, devise and bequeath unto James M. Rolofson, Laura Swearingen, Arabella Rolofson, Charles S. Rolofson, and John J. Rolofson, each a one-sixth (1-6) interest of said money, and to Ralph W. Thorp and Thornton Thorp each a one-twelfth (1-12) interest of said money, and in case any of said named children be dead at that time, then the share of such deceased child be paid to his or her heirs.

"Item Six. I do hereby nominate and appoint my sons, John J. Rolofson and Charles S. Rolofson, to be my executors of this, my last will and testament, hereby revoking all former wills by me made."

The executors have settled the estate of the testator, paid all of the debts and claims against the estate, converted the real and personal assets into money, and there remains for distribution the sum of $51,622.56, after reserving a fund of one thousand dollars for taxes, for the payment of which there is a contingent liability.

Appellee presented her bill of complaint to the circuit court of DeWitt county, averring that she is the surviving widow of John Jay Rolofson, one of the named executors and trustees in the will, who departed this life on December 9, 1923, intestate, leaving him surviving as his only heirs at law the complainant, appellee, as his widow, and the appellant, his son and only child by a former wife; that the testator died,

leaving him surviving James M. Rolofson, Laura Swearingen, Arabella Rolofson, John Jay Rolofson, Charles S. Rolofson, Ralph W. Thorp and Thornton Thorp, named in the will; that the said John Jay Rolofson and Charles S. Rolofson qualified and assumed the duties of executors and trustees under the terms and conditions of the will, and performed such duties jointly until the death of said John Jay Rolofson, whereupon said Charles S. Rolofson has acted as sole executor and trustee. Complainant averred that as heir of said John Jay Rolofson, deceased, she was entitled to receive as her distributive share of said estate the sum of $2,867.92, but that said executor and trustee refused to pay the same or any portion thereof to her. There was a prayer for the construction of the will and a decree of distribution. Charles S. Rolofson, executor, and appellant John Jay Rolofson, Jr., answered the bill, denying appellee's right to demand distribution or to take any portion of the estate, and averring that under item five of said will the interest of the beneficiaries is a contingent future interest, depending upon the beneficiaries surviving the period of distribution; that the term "heirs" was used in the will meaning child or children and does not include the surviving widow; that John Jay Rolofson never acquired a vested interest in said funds; that the conversion of the estate of John B. Rolofson into money did not occur until after the death of said John Jay Rolofson, and averring that appellee has no right or title to any distributive share in the estate, etc. It was shown by the proofs as to the marriage status of testator's children, that James M. Rolofson, a son, was married and living with his wife. He had been married twice, and there was one child living of the first marriage and five children living of the second marriage; that Laura Swearingen, a daughter, was married and living with her husband. They had been married fifty years. They had two children, and one

was living at the time of the death of John B. Rolofson; that Arabella Best, a daughter, was married in October, after the death of her father in June, 1922, and was living with her husband; that John Jay Rolofson, a son, died after his father, at the age of sixty-two years. He had been married twice. The first wife died in 1910. One child was born of that marriage. John Jay Rolofson was living with Bertha M. Rolofson, his second wife, at the time of the death of John B. Rolofson, and left him surviving his son, John J., and his widow, Bertha M., parties to this suit; that Charles S. Rolofson, a son, was living with his wife, and had been married about forty-two years. He had eight children; six children were living; that Mattie Thorp, a daughter, died about 1920, before her father died. She left her surviving her husband, William H. Thorp and two children, Ralph W. and Thornton. Both the boys were married before their grandfather died and each was living with his wife. The husband and two boys and their wives were all living at the time of the death of John B. Rolofson.

John B. Rolofson was on friendly terms with his daughter, Mattie and her husband, William H. Thorp, both before and after the death of Mattie Thorp, and the friendship continued up until John B. Rolofson died. The will was made April 6, 1922, about two years after the death of Mattie Thorp.

It appears by the proofs that the son of testator, John Jay Rolofson, at his death left a very meager estate—a house and lot in Wapella and about twenty-five hundred dollars in personalty. There was a decree in the lower court granting the prayer of appellee's bill of complaint, and the stepson, John Jay Rolofson, Jr., has appealed.

Appellant contends that the court erred in finding and decreeing that the word "heirs" in the fifth clause of the will is used in its technical sense, as importing those persons designated by law to succeed to

the estate in case of intestacy. It is argued from the wording of the will that it is a strong circumstance, tending to show that the testator intended his estate to descend to the issue of the legatees named in the will, that he made no provision for William H. Thorp, surviving husband of his deceased daughter, Mattie, with whom he had been on friendly relations all his life, and it is strongly contended that if the testator had intended any of the surviving widows or husbands of his children, who should not live to the date of distribution, to take any interest in his estate, provision would have been made for William H. Thorp. It is to be noted that all of the children of the testator, at the time of his death, were well advanced in years. When the will is analyzed, it will be found that the testator made exactly the same provision for William H. Thorp that he made for appellee or the husband that Arabella Rolofson married after her father's decease, in case of her own death. Under the proofs, the two grandsons, Ralph Thorp and Thornton Thorp, were both married and living with their wives, but neither had any children. In case of the death of either grandson, William H. Thorp would have been an heir to his estate. The same situation might have arisen in the family of Arabella Rolofson. It is true that the testator desired his estate to descend to his own children, but there is no wording in the will, other than the word "heirs," indicating that the property was to be entailed or limited to the issue of his children in case of their decease.

The first rule of construction to be applied in this case is the cardinal rule of construction of all wills—the rule as to the intention of the testator as expressed in the will itself. In *Perry v. Bowman*, 151 Ill. 25, 31, the court laid down the rule in the following language: "In construing the will, the intention of the testatrix, as derived from all its provisions, will control, and

effect will be given to such intention when ascertained.''

In *Pereboom v. Cloyd,* 317 Ill. 85, the court held: ''It has been often decided that the paramount rule in the construction of wills is to ascertain the intention of the testator from an examination of the language of the will and then give effect to such intention unless contrary to public policy or some rule of law,'' citing *McComb v. Morford,* 283 Ill. 584.

The real question in this case is, who constituted the ''heirs'' of John Jay Rolofson at the time of his decease and at the time of distribution, under the will of testator. John Jay Rolofson died, leaving a widow, the appellee, and a son, the appellant, both of whom were living at the time of distribution. Was the widow, appellee, an ''heir'' of the estate of her husband, John Jay Rolofson, he having left a surviving son? That is the only question in this case. In *Gauch v. St. Louis Mut. Life Ins. Co.,* 88 Ill. 251, the identical question arose upon a policy of insurance, and Mr. Justice Schofield elucidated the subject fully. The rule followed in *Rawson v. Rawson,* 52 Ill. 62, and *Richards v. Miller,* 62 Ill. 417, in both of which cases the intestate left no surviving children, is differentiated, and the court holds as to those cases: ''In those cases, the deceased left no child or children nor descendants of child or children surviving; and hence the widow in the first case, and the husband in the last case, occupied the relation to the deceased which entitled them to one-half of the real estate, and the whole of the personal estate, upon renouncing the benefits of the bequests and devises of the respective wills. In those cases, the husband and wife, respectively, were held to be heirs at law, under the existing facts. Had there been a child or children or descendants of a child or children surviving, however, it is evident it could not have been held they were heirs at law, on the grounds stated in the opinions, for, in that con-

tingency, the child or children, or descendants of child
or children, would have been entitled to the property,
subject to the claim of dower in the real estate, and
the claim for one-third of the personal property of
the surviving husband or wife.''

The court further held: ''In certain contingencies,
brothers, sisters, parents, and even kindred in the re-
motest degree, are heirs at law; but it would be absurd
in the extreme to suppose that an individual having
children, who should devise and bequeath his prop-
erty to his 'legal heirs,' intended all his kindred should
take.   The legal presumption, in such case, would
clearly be, that he intended those to whom the law
would give his property—real and personal—he dying
intestate; and hence it is the actual capacity of inherit-
ance, at the time of the death of the owner of the prop-
erty, and not the fact that a particular person might
have inherited from him under a state of facts which
did not exist, that determines who is heir.

''It is plain the widow here did not take as did the
parties in *Rawson et al. v. Rawson et al.*, and *Richards
v. Miller, supra,* because Gauch left children surviving
him, and she can not, therefore, be declared 'legal
heir' upon the grounds upon which the wife in the one
case and the husband in the other were there so de-
clared.

''But reliance is placed by counsel for appellant on
this language, found in the Revised Statutes of 1874,
in the fourth clause of § 1 of chap. 39, entitled 'De-
scent:' 'When there is a widow or a surviving husband,
and also a child or children, or descendants of such
child or children of the intestate, the widow or surviv-
ing husband shall receive, as his or her absolute per-
sonal estate, one-third of all the personal estate of the
intestate.' So far as this affects the widow, it is not
of recent enactment.   The only new feature in it is
that recognizing the same right of the husband in re-
spect to the wife's estate that the wife has in respect

to that of the husband; and this was, obviously, to harmonize with the statute abolishing tenancy by the curtesy and giving the husband dower in the lands of the deceased wife, the same as the wife has in the lands of the deceased husband. See Rev. Stat. 1874, chap. 41, title, Dower, § 1. The provision was first enacted in section 6 of 'An act to amend an act concerning wills,' approved February 11, 1847. (Laws of 1847, p. 168.)

"The section then read thus: 'The word "dower," as used in the 46th section of the 109th chapter of the Rev. Stat., entitled "Wills," shall be construed to include a saving to the widows of persons dying intestate, of one-third of the personal estate forever, after the payment of debts.'

"Section 46 of the Revised Statutes of 1845, which was thus amended, declares how estates of intestates shall descend. Rev. Stat. 1845, p. 545.

"In *Rawson et al. v. Rawson et al., supra*, it was argued that this amendment repealed so much of the section amended as gave to the widow of an intestate who left no child or children or descendants of child or children surviving, one-half of the real, and the whole of the personal estate, but this court said: 'It is very apparent, we think, that this act is treating of a widow entitled to dower, not as an heir under the 46th section, under which the claim in question is presented. The only subject before the legislature, when this amendatory act was passed, was, the rights of the widow as such. It was not designed to abridge her rights as an heir, under the statute of descents, but to enlarge her dower rights.' If that was the object and effect of that enactment then, it can hardly be seriously claimed that the revision of 1874 has changed it.

"That it was intended to be used in the same sense in the revision of 1874 is, we think, further obvious from the 10th section of Chap. 41 of that revision, entitled 'Dower,' which provides: 'Any devise of land or

any estate therein, or any other provision made by the will of a deceased husband or wife for a surviving wife or husband, shall, unless otherwise expressed in the will, bar the dower of such survivor in the lands of the deceased, unless such survivor shall elect to and does renounce the benefit of such devise or other provision, in which case he or she shall be entitled to dower in the lands and to one-third of the personal estate after the payment of debts.'

"Now, this very clearly has no reference whatever to the rights of the husband and wife as *heir* to each other, but solely to their rights as *widow* or *surviving husband*. And this is placed beyond cavil by the 12th section of the same act, which exclusively relates to cases where, under the statute, the one inherits from the other, and a will has been made.

"The word 'heir' has a technical signification, and we must presume that, in the policy, the term 'legal heirs' was used in its strict and primary sense, there being nothing in the context to show that it was used in any other sense. It was said in *Richards v. Miller, supra*, 'the word heir, when uncontrolled by the context, designates the person appointed by law to succeed to the real estate in question in case of intestacy;' referring to 2 Jarman on Wills, 1. Jacob says, 'heir is he who succeeds, by descent, to lands, tenements and hereditaments, being an estate of inheritance.' We know of no respectable authority, and venture there is none, holding that one entitled to dower or an interest in the nature of dower, or any allowance of personal property only, because of the survivorship of the husband or wife, is held to be included within the legal definition of 'heir.' Nor is the distinction between the word 'widow' and the word 'heir' less marked in common parlance. No one having children speaks of his wife, in contemplation of her survivorship, as his 'heir;' but it is believed it is universal that

she is referred to as 'widow,' and the children as 'heirs.'

"There is, therefore, no reason, in our opinion, for holding that when Gauch had the words 'legal heirs' inserted as the beneficiaries of the policy, he intended his wife."

The rule laid down in the *Gauch* case has been followed in *Alexander v. Northwestern Masonic Aid Ass'n,* 126 Ill. 558, 565. (In both of which cases it is held that it is the actual capacity of inheritance at the time of the death of the owner of the property that determines who is heir, which is an elementary rule.) *Black v. Jones,* 264 Ill. 548; *McGinnis v. Campbell,* 274 Ill. 82, 85; *Smith v. Winsor,* 239 Ill. 567; *Fraternal Tribunes v. Teutsch,* 170 Ill. App. 47, 51, and *Walker v. Walker,* 207 Ill. App. 186, 194. In the *People v. Emery,* 314 Ill. 220, 225, it was held: "When an heir takes in the character of an heir he must take in the quality of heir, and all heirs taking as heirs must take by descent," citing *Baker v. Scott;* 62 Ill. 86. In the citation it is construed to the end that the rule in Shelley's case would apply. Appellee cites *Walker v. Walker, supra,* and urges that the Supreme Court reversed the Appellate Court (see 283 Ill. 27) upon the very principle contended for by appellee in the case at bar. We do not so understand the rule announced. The court held:

"Counsel for the trustee relies strongly on the reasoning and conclusion of this court in *Gauch v. St. Louis Mutual Life Ins. Co.,* 88 Ill. 251, as to the wording of a life insurance policy which provided that the money paid under the policy should be made payable to the legal heirs or assigns. That case is clearly distinguishable in the difference between the wording of the policy and that of this will on the point here under consideration. There was no reference in that insurance policy to the legal heirs or assigns 'according to the Statute of Descent in this State,' while the will

here does contain such a provision. If this will had simply provided that Minnie Whiting's share should be distributed at the end of the ten-year period, if she was not living, to her 'heirs-at-law,' and stopped there, then it might be argued with more force that the testator intended the property to go to her heirs who were of his blood and that the husband would not be included as one of such heirs. But where there is an express reference, as here, to the statute of distribution, and the husband would take under such statute of distribution, by the great weight of authority in this and other jurisdictions, and by sound reasoning, the husband must be held to be included in the term 'heirs-at-law.' The Appellate Court wrongly held that he was not included.''

In *Walker v. Walker, supra,* it was further held: ''If the will be construed to mean that the 'heirs-at-law,' do not include the husband of Minnie Whiting, then, if the property is to be distributed 'according to the Statute of Descent in the State of Illinois,' it only provides for the distribution of two-thirds of the Minnie Whiting share, because under the Statute of Descent the children of Minnie Whiting would only take two-thirds and the surviving husband would take the other one-third. To so hold would be, it seems to us, to put an unreasonable and unnatural construction upon the wording of the will and would leave the words of the will, 'according to the Statute of Descent in the State of Illinois,' without any real meaning.''

Appellee cites *Henkins v. Henkins,* 287 Ill. 62, but upon examination of the facts in that case the widow was held to be an heir because her intestate died leaving no child or children or the descendant of any child or children. The same state of facts existed in *Harris v. Rhodes,* 130 Ill. App. 233, 236, which was cited by appellee.

The words ''heirs'' and ''heirs at law'' are in a legal sense the same, *Smith v. Winsor, supra,* and in

Rolofson v. Rolofson, 246 Ill. App. 305.

that case the court held: "It seems plain to us that the words 'heirs at law' were used by the testator in their colloquial or popular meaning and not in their technical sense. That excludes the wife."

In *Meeker v. Steepleton*, 309 Ill. 337, 338, the court held: "When the word 'heirs' is used in a will there is a strong legal presumption that it is used in its technical sense, as denoting the whole of the indefinite line of inheritable succession," not of those who might have been heirs under a different state of facts, but those and that whole class who did inherit the property of the intestate as applied to the particular facts of the case in hand. We do not find that the principle of the rule laid down in *Gauch v. St. Louis Mut. Life Ins. Co., supra,* has ever been departed from when the term "heirs" is used in its technical sense. We do find various constructions when colloquial and popular terms are attached to the term heirs, such as "heirs who take under the statute of descent," and "heirs to whom the estate is to be distributed under the statute," and similar provisions. We are unable to escape the conclusion that when the term "heir" is used in its technical sense, it does not include the surviving wife or husband, except when the facts of the case come under clause three of section one of the chapter entitled "Descent," Cahill's St. ch. 39, ¶ 1, providing for the widow or surviving husband when there is no child or children or descendants of a child or children of the intestate.

It follows that the circuit court of DeWitt county erred in the entry of the decree and that decree is reversed and the cause remanded, with directions to dismiss the bill of complaint for want of equity.

*Reversed and remanded with directions.*