AUGUSTA WELCH *et al.* Appellees, *vs.* EDWARD A. WHEE-
LOCK *et al.*—(THOMAS CARR, Appellant.)

*Opinion filed December 22, 1909.*

WILLS—*when the devisees take per stirpes and not per capita.*
Under a residuary clause providing that the residue "shall go and
descend to my legal heirs according to the laws of the State of
Illinois," the legal heirs, who are nephews and nieces, will take
*per stirpes,* and the fact that the clause further provides that a
certain person, if living when the residue is divided, shall be re-
garded as a legal heir and "shall receive an equal share with my
nephews and nieces" does not require the devisees to take per cap-
ita, but such person will share equally with each group of nephews
and nieces. (*Pitney* v. *Brown,* 44 Ill. 363, distinguished.)

APPEAL from the Circuit Court of McLean county;
the Hon. COLOSTIN D. MYERS, Judge, presiding.

KERRICK & BRACKEN, and BRACKEN, YOUNG & PEIRCE,
for appellant.

ARTHUR B. WILSON, and WELTY, STERLING & WHIT-
MORE, (W. B. LEACH, guardian *ad litem,*) for appellees.

Mr. CHIEF JUSTICE FARMER delivered the opinion of
the court:

This was a partition suit begun in the circuit court of
McLean county by two nieces and a nephew of the testator
for the partition of certain real estate complainants alleged
they, and others made defendants to the bill, were entitled
to under the will of Francis A. Wheelock, the testator, who
was the owner of said real estate in his lifetime. The bill
alleged that the provisions of the will of Francis A. Whee-
lock, under which the parties to the suit claimed title to
the premises sought to be partitioned, were ambiguous,
and that it was to the interest of all the parties that the
will be construed and its true meaning adjudicated and
decreed in determining the interests of the parties in said

premises. At the time the codicil, which is the portion of the will to be construed, was executed by Francis A. Wheelock his next of kin were nephews and nieces, descendants of five brothers and a sister who were dead. Of these deceased brothers and sister of the testator some left three, some four and one five children or descendants of children. The claim in the answer is, that the residuum of the estate devised by Francis A. Wheelock should be divided into twenty-three equal parts, twenty-two of which parts should go to the nephews and nieces of the testator and one to Thomas Carr, appellant. Carr answered the bill, denying that the interests of the parties were properly set out therein, and claimed to be entitled, under the will, to the undivided one-half of the premises devised by the will of Francis A. Wheelock to him and the nephews and nieces.

The testator owned in his lifetime three hundred and sixty-five acres of farm land and one lot and part of another of town property. By his will he devised the homestead and one-half of the residue of his real estate to his wife in fee simple. He also gave her a life estate in the remaining half of his real estate, charged with certain legacies payable after his death. One of these legacies was to Thomas Carr, appellant, and the provision of the will for the payment of the legacy to him is as follows: "To my protege, Thomas Carr, now of Chicago, Illinois, who has always listened to my advice and by his manly and straightforward course under all circumstances has won for himself a creditable position in life, I bequeath the sum of $8000; also to said Thomas Carr I bequeath my gold watch, chain and charm, to be delivered to him at my death. In case the said Thomas Carr should not be living at the time the bequest of $8000 is payable under this will, then, in case he shall leave one child at that time alive, only one-half of the bequest of $8000 shall go and descend to said child, and in case the said Thomas Carr shall at his death before the time above mentioned leave him surviving

more than one child living at the time provided herein for the payment of said legacy, then the entire $8000 shall go and descend to such children, share and share alike. In case the said Thomas Carr shall die before receiving the said legacy under the terms of this will and leave no issue living at the time provided herein for the payment of said legacy, then one-fourth, only, of the said legacy shall be paid over to his widow, if living, and the residue to revert to my estate, and if she be not living at that time, the whole of said legacy to revert to my estate."

By the will as originally executed the testator gave certain of his nephews and nieces $100 each, to others $250 each, to one $2000 and to another $11,000. The will was executed October 11, 1897, and on the 25th of the same month the testator executed a codicil, by which he increased the legacy to his nephew Henry G. Wheelock from $2000 to $2500, and appointed trustees to hold and invest the same and pay the interest to the legatee. By this codicil appellant was also given an additional $1000, payable after the death of the testator's wife. The testator executed another codicil to his will on the 11th day of July, 1901. By it he revoked the devise made to appellant in the codicil executed October 25, 1897, and in lieu thereof devised to appellant the sum of $2000, payable after the death of testator's wife, and if appellant should die before that time leaving a child surviving him, then said sum was payable to his widow. Said codicil, in addition to other provisions not necessary here to be noticed, contained the following clause: "The provision marked 10 in my original will, in reference to the disposition of any excess of one-half of my property over and above the legacies provided for in said will, I do hereby modify and change so that the same shall read as follows: One-half of my estate should, at its present valuation, more than cover all the bequests and legacies I have made in my said will and the two codicils thereto, and therefore it is my will that excess or surplus

of my property that shall be left after the payment of all
the bequests and legacies herein provided shall go and de-
scend to my legal heirs according to the laws of the State
of Illinois. The said Thomas Carr, if living when the
residuum of my estate is distributed, shall receive an equal
share with my nephews and nieces, it being my intention,
if said Thomas Carr is then living, that he shall be re-
garded the same as if he was my legal heir; and the chil-
dren and descendants of children of my deceased nephew,
Harrison W. Wood, shall receive the share that Harrison
W. Wood would take if living, to be divided among said
children, share and share alike. This provision to relate
only to the residue of estate after payment of all legacies."
It is this provision of the codicil the court was asked to
construe, and its construction presents the only question
for our determination.

The debts of the testator and the legacies provided by
his will had been paid and his widow had died before the
bill was filed, and it was for the partition of the real estate
devised to the testator's nephews and nieces and to appel-
lant that the bill was filed. After issue joined the court
referred the cause to the master in chancery to take the
proof and report his conclusions of law and fact. The
master reported that under the codicil the real estate of
the testator passed to and vested in the devisees "in the
proportions set out in the Statute of Descent of the State
of Illinois, including said Thomas Carr as one of the roots
from which to reckon said descent,—that is to say, that
the distribution shall be traced through the six roots, be-
ing the five brothers and the sister of the testator, and an
added root represented by Thomas Carr;" that the de-
scendants of the testator therefore took *per stirpes,* and
that appellant, Thomas Carr, took a one-seventh of said
real estate. Objections and exceptions were filed by com-
plainants to the bill, and also by appellant, Thomas Carr.
The court sustained certain of the exceptions to the report

of the master, and entered a decree finding that it was the meaning and intention of the testator, as expressed in the codicil to his will, that all of his nephews and nieces "should inherit the residuum of his estate in equal portions,—that is, per capita and not *per stirpes*,—but that the descendant or descendants of a deceased nephew or niece of said testator should inherit the deceased parent's portion *per stirpes;* and the court further finds that it was the intent and purpose of said testator, as expressed by said codicil, that the defendant, Thomas Carr, should receive a share equal to the share received by each of his said nephews and nieces." The decree therefore directed that the property be divided into twenty-three parts; that appellant, Thomas Carr, was seized of and entitled to one equal twenty-third part of the real estate devised, and the nephews and nieces of the testator were seized of and entitled to the other twenty-two equal parts.

The residuary clause of the will as originally drawn directed that the residuum of the testator's estate should be prorated among his legal heirs, except two of them, who were not to share therein. No such language is found in the codicil which revokes the original residuary clause. The codicil directs that the property "shall go and descend to my legal heirs according to the laws of the State of Illinois. The said Thomas Carr, if living when the residuum of my estate is distributed, shall receive an equal share with my nephews and nieces, it being my intention, if said Thomas Carr is then living, that he shall be regarded the same as if he was my legal heir." If the nephews and nieces took according to the Statute of Descent they could not take per capita, because their ancestors through whom they became heirs did not leave an equal number of descendants. If they took under the will the interest they would have taken as heirs by virtue of the Statute of Descent, the descendants of each of the brothers and sister took only the shares their ancestors would have been en-

titled to, respectively, as heirs, and the number of descendants surviving the said brothers and sister being different, it must follow that the share that each set of descendants of a brother and sister would take would be divided according to their number. To hold that they took per capita and not *per stirpes* would require that the provision of the codicil devising the property to the testator's legal heirs according to the laws of descent should be disregarded and given no effect.

Appellees contend that this clause is repugnant to the later clause that appellant should be regarded as a legal heir of the testator and receive an equal share with his nephews and nieces. The general rules for the construction of wills as quoted in *Auger* v. *Tatham,* 191 Ill. 296, at page 301, and repeatedly followed and adhered to, are: "Cases on wills may guide us to general rules of construction, but unless a case cited be in every respect directly in point and agree in every circumstance it will have little or no weight with the courts, who always look upon the intention of the testator as the polar star to direct them in the construction of wills." In *Howe* v. *Hodge,* 152 Ill. 252, this court said (p. 266): "The polar star in the interpretation of a will is the intention of the testator. This intention is to be gathered from the words and expressions used in the will itself. The different provisions and parts of the instrument are to be compared with and read in the light of each other, so as, if possible, to deduce therefrom an harmonious whole." In *In re Estate of Cashman,* 134 Ill. 88, this court said (p. 91): "The main object in the construction of a will is to ascertain the intention of the testator as expressed in the instrument, and that intention must prevail unless it is inconsistent with the rules of law."

That the testator entertained a strong attachment for appellant and a desire to make him a substantial beneficiary under his will, and his reasons therefor, appear from other provisions of the will. In the absence of a will the neph-

242—25

ews and nieces of the testator would have inherited *per stirpes* and appellant would have taken nothing by the laws of descent. As heirs each set of nephews and nieces would have taken under the laws of descent the interest their ancestors would have been entitled to if living. As heirs the nephews and nieces represented and stood in place of their deceased ancestors. Under no reasonable construction of the codicil could it be said that it was the intention of testator that his nephews and nieces should take per capita. If the provision relating to Thomas Carr be eliminated, it would not be contended, we apprehend, that the nephews and nieces took per capita, for it would seem as clear as language could make it that the intention was they should take *per stirpes.* To give the construction to the codicil given by the chancellor would require holding that the provision for appellant was repugnant to the direction that the nephews and nieces take as heirs according to the laws of descent, and shows the intention of the testator to devise the property so that the devisees would take it, not as heirs under the laws of descent, but per capita without regard to such laws. We find no warrant in the codicil for any such construction. To our minds, when all of its provisions are considered, it is not inconsistent with but sustains the construction that gives appellant a one-seventh interest in the property. In *Lomax* v. *Shinn,* 162 Ill. 124, this court said (p. 128) : "It is a familiar rule of construction that in ascertaining the intention of the maker of a will effect must be given to all of the language used, if it can be done. That is to say, if one construction will render a portion of the language used meaningless while a different one will give effect to all the language used, the latter must be adopted."

In our opinion there is no repugnancy between the different clauses of the codicil, and the construction we have given the codicil gives effect to all its language, and such

construction, it seems clear to us, gives effect to the expressed intention of the testator and violates no rule of law.

We do not think the construction of this will is controlled by the authorities cited by the appellees, principally from other States. The devises in those cases were to persons of different classes, such as a brother and the children of a deceased brother of a testator, with directions that it be "equally divided" or that the devisees "share equally," or that the property be distributed among them in "equal shares." The holdings of those authorities were that the devisees took per capita. In those cases there was nothing in the language of the wills to indicate a different intention of the testator.

Much reliance is placed on *Pitney* v. *Brown,* 44 Ill. 363. In that case the testator directed that his residuary estate should "be equally divided between the children of my late brother, Mahlon Pitney, and my brother-in-law, William H. Brown." Following the rule quoted from Jarman on Wills, that in a devise by a testator to his brother A and the children of his brother B, the brother and the children of a brother each take an equal share in the property devised, the court held that the children of Mahlon Pitney and William H. Brown took per capita. It is to be observed, however, that from the language used in the will this construction was in harmony with the apparent intention of the testator and there were no other words that indicated a different intention. The rule as laid down by Jarman, the author himself says, yields readily to any indication in the language used of a different intention of the testator. In commenting upon this rule stated by Jarman, this court said in *McCartney* v. *Osburn,* 118 Ill. 403, at page 425: "It is conceded, and such is unquestionably the law, that if a testamentary gift be made to one person and the children of another person, as, for instance, to A and the children of B, A and the children of B, in such case, in the absence of anything to show a contrary inten-

tion, will take per capita and not *per stirpes*. (2 Jarman on Wills, 756.) Yet it is equally well settled that the opposite construction will prevail when the intention to that effect can be gathered from the context, or, in the somewhat quaint language of Jarman, 'this mode of construction will yield to a very faint glimpse of a different intention in the context.'" There is not only a "faint glimpse" in the language of the codicil that the testator did not intend the property to be divided per capita, but the language used precludes attributing such an intention to him, for he directs that it go to the devisees according to the laws of the State of Illinois. This language is, we hold, not repugnant to any other clause or provision and must be given effect in the construction of the will. We find nothing in the codicil to support appellant's contention that he is entitled to a one-half interest in the premises.

In our opinion the chancellor erred in sustaining exceptions to the report of the master, and the decree is reversed and the cause remanded, with directions to enter a decree in accordance with said master's report.

*Reversed and remanded, with directions.*