## Mary Baker et al., Appellants, v. Allen Baker et al., Appellees.

1. WILLS—*when distribution will be per capita.* When the division is among a named class, such as heirs, heirs-at-law, legatees, or children and grandchildren, etc., the distribution is to be made *per capita* when the words, "equally," "equal among," or "share and share alike," or other simliar words are used to indicate an equal division, unless a contrary intention is discoverable from the will.

2. WILLS—*when presumption in favor of per capita distribution rebutted.* The presumption in favor of a *per capita* distribution yields readily in favor of a faint indication of the testator that the distribution shall be *per stirpes.*

3. WILLS—*how to be construed.* The cardinal principle in construing a will is to ascertain the intention of the testator. In no case is a court bound to confine itself to a single clause of the will and the language therein found to ascertain the testator's intention as expressed in that particular clause; but the intention of the testator will be derived from a view of the whole will and of all its parts.

4. Wills—*when distribution will be per stirpes. Held*, from the language of the particular will in construction as an entirety, that the distribution of the residue of the testator's estate in question should be *per stirpes*.

5. Wills—*how words indicating equality of division are applied.* Words indicating equality of division, such as "to be divided equally," etc., do not necessarily mean a *per capita* equality, but they apply just as readily and appropriately to a *per stirpes* equality.

6. Wills—*how words of doubtful meaning construed.* Words of doubtful meaning should be construed so as to harmonize with the plan or scheme of the testator, and where they are susceptible of two constructions that construction should be adopted which is most favorable to the heir nearest in relationship to the testator, and so as not to result in discrimination.

7. Wills—*how words occurring more than once construed.* Words occurring more than once in a will are presumed to be used always in the same sense when the context does not show a contrary intention.

Bill in chancery. Appeal from the Circuit Court of Pope county; the Hon. A. W. Lewis, Judge, presiding. Heard in this court at the February term, 1909. Reversed in part, affirmed in part, and remanded with directions. Opinion filed February 11, 1910.

**Statement by the Court.** This was a suit in chancery, begun in the court below, for the purpose of obtaining a judicial construction of the eleventh clause of the will of Thomas Baker, deceased, by Mary E. Baker and Charles C. Baker, executors, and Abraham Baker, Grover Baker, H. T. Barrett and John Barrett, all legatees of said deceased. The will was executed May 23, 1906, has been duly probated, and the clauses thereof that are material to the consideration of this appeal are as follows:

"Second. To my beloved wife, Mary E. Baker, I give, devise and bequeath all my household and kitchen furniture, stock, grain and farming implements; also my home farm, to wit: (description of farm here follows) containing in all 160 acres, situated in Pope County, Illinois, to occupy and control the said farm until her death or second marriage, after which said land shall go and be equally divided between Abraham and Grover Baker, my sons. I further give and be-

queath my wife, Mary E. Baker, two thousand dollars in notes and mortgages.

"Third. I give, devise and bequeath my three thousand dollar bank stock of the National State Bank of Metropolis, and two thousand dollars in notes and mortgages to my son, Grover Baker.

"Fourth. I give, devise and bequeath my three thousand dollar bank stock of the First National Bank, of Golconda, Illinois, and two thousand dollars in notes and mortgages to my son, Abraham Baker.

"Fifth. I give, devise and bequeath to my son, C. C. Baker, five thousand dollars in notes and mortgages.

"Sixth. I give, devise and bequeath to the children of Nancy Barrett, namely: H. T. Barrett and John C. Barrett, two thousand, five hundred dollars each in notes and mortgages.

"Seventh. I give, devise and bequeath to the children of Julia Barrett Ramage one dollar each.

"Eighth. I give, devise and bequeath to Allen Baker one thousand dollars in notes and mortgages.

"Ninth. I give, devise and bequeath to Lou Perrin, Beulah Baker, Alva Baker, Ruth Baker, grandchildren and the children of Sarah E. Rottman, deceased, (namely, Katie, Walter and Lela) four thousand dollars in notes and mortgages, to be divided equally, the children of Sarah Rottman to take their mother's share only.

"Tenth. I give, devise and bequeath to Addie Baker and Viola Baker, children of Thos. F. Baker, deceased, one dollar each.

"Eleventh. And the balance of my estate, if any, I give, devise and bequeath (to be divided equally) to the legatees herein, except those that I have bequeathed one dollar each, namely: Julia Ramage's and Thos. F. Baker's children, legatees herein before named.

"Twelfth. I hereby direct the legatees herein named be permitted, by the executors, to select either in person or by guardian, if a minor, the amount of notes and mortgages due them, in the order in which the legatees are herein given.

"Thirteenth. I desire and direct that in case of the

death of any of the legatees herein, before receiving their said legacy, that then and in that case the same be paid to their heirs under the statute of descent.

"Lastly. I hereby nominate and appoint Mary E. Baker, my wife, Chas. C. Baker, my son, without bond or compensation to be the executors of this my last will and testament, hereby revoking all former wills and codicils by me made."

Thomas Baker was married twice, his first wife having died more than twenty years prior to his death. He died August 16, 1906, leaving Mary E. Baker, his widow, and Grover Baker and Abraham Baker, two minor sons, as his only heirs by his second wife. These were the only legatees named in his will who lived with him at the making of his will and up to his death. The testator also had four children by his first wife, to wit: Charles C. Baker, Nancy Barrett, Henry Baker and Thomas F. Baker, none of whom were living when he made his will, except Charles C. Baker, one of the executors. The widow and the three surviving children are given specific legacies by this will in the second, third, fourth and fifth clauses thereof. Nancy Barrett left three children, H. T. Barrett, John C. Barrett and Julia Barrett-Ramage, the last named having married and died in Kentucky, leaving children whose names are not found in this record. The children and grand-children of Nancy Barrett, deceased, are given specific legacies by the sixth and seventh clauses of the will. Henry Baker's surviving children are Allen Baker, Lou Perrin, Beulah, Alva and Ruth Baker. He also left three grand-children, Katie, Walter and Lela, children of Sarah Rottman, his deceased daughter. Specific legacies are given to Henry Baker's said children and grand-children by the eighth and ninth clauses of the will; and specific legacies are given to the children of Thomas F. Baker, deceased, in the tenth clause of the will. All these legatees survived the testator. Lou Perrin has died since leaving John Perrin as her only child and only heir. The farm devised to the

widow is worth $3,500. The notes and mortgages, stocks, etc., amounted to about $42,000; and the amount remaining for distribution under the eleventh clause of the will is about $15,000. The court below adjudged and decreed that the residue mentioned in the eleventh clause of the will should be divided *per capita* among the fourteen legatees, *i. e.*, into fourteen equal parts or shares, the widow, every child, and every grand-child, and every great grand-child, of the deceased taking one-fourteenth thereof; and that that is the true construction of the testator's intention by said clause. The complainants appeal from that decree, and insist here, that under said clause, the legatees should take *per stirpes, i. e.* the widow to take one-sixth; every one of the three children of the deceased, one-sixth; and H. T. Barrett and John C. Barrett, together, one-sixth; and the children and grand-children of Henry Baker, deceased, all together, as a class, one-sixth; and that the legatees should not take *per capita* as held by the court.

JAMES C. COURTNEY, for appellants.

VAL. MULKEY, for appellees.

MR. JUSTICE DUNCAN delivered the opinion of the court.

The only question for our consideration in this case is as to the proper construction of the eleventh clause of said will, to wit: "And the balance of my estate, if any, I give, devise and bequeath (to be divided equally) to the legatees herein, except those that I have bequeathed one dollar each, namely: Julia Ramage's and Thos. F. Baker's children, legatees herein named." When the words "equally," "equal among," or "share and share alike," or other similar words are used to indicate an equal division among a class, the persons among whom a division is to be made take *per capita,* unless a contrary intention is discoverable from the will. This is true under the law of

this state and most of the other states when the named class are "heirs," "heirs at law," "legatees," or "children and grand-children," etc. Kelley vs. Vigas, 112 Ill. 245; Pitney v. Brown, 44 Ill. 365; McCartney v. Osburn, 118 Ill. 403; Auger v. Tatham, 191 Ill. 296; Welch v. Wheelock, 242 Ill. 380; Best v. Farris, 21 Ill. App. 49; Fisher v. Skillman's Executors, 3 C. E. Green (18 N. J. Equity) 229; West v. Rassman, 135 Ind. 279; Bisson v. W. S. R. R. Co., 143 N. Y. 125; Hoppock v. Tucker, 59 N. Y. 202; Ferrer v. Pyne, 81 N. Y. 281; Geery v. Skelding, 62 Conn. 499; Ruggles v. Randall, 70 Conn. 44; Raymond v. Hillhouse, 45 Conn. 469; Am. and Eng. Ency., 30 Vol., 721, 2nd Ed. These cases fully illustrate the rule, and all of them recognize it, although some of them hold that the distributions should be *per stirpes* for other reasons appearing in the particular wills considered.

The presumption in favor of a *per capita* distribution yields readily in favor of a faint indication of the testator that the distribution shall be *per stirpes*. If from the will, as a whole, a different intention appears, it will control, notwithstanding such words. See same authorities above cited, and Am. and Eng. Ency., 30 Vol., 733, 2nd Ed. Similarly, the presumption in favor of a *per stirpes* distribution arising from the use of the words "heirs," "heirs at law," etc., without the use of the words "to be equally divided," etc., will yield to a contrary intention on the part of the testator, either expressed or implied. Am. and Eng. Ency., 30 Vol., 734, 2nd Ed.; Richards v. Miller, 62 Ill. 417. In no case is a court bound to confine itself to a single clause of the will and the language therein found to ascertain the testator's intention as expressed in that particular clause. Neither is it bound absolutely by any general rule of interpretation applicable to the language of that particular clause. "In the construction of wills the great object is to ascertain the intention of the testator, and this intention is to be gathered, not from one clause of the

will alone, but from a view of the whole will, and of all its parts.'' Morrison v. Schorr, 197 Ill. 563.

It is important then to examine into the other parts of the testator's will and ascertain if there are any other facts or expressions therein to be found that lead to the conclusion that the distribution of this residuary estate should be *per stirpes* as contended by appellants. We find that the legatees who are to share in this residuary estate are fourteen in number, related to the testator in different degrees, and are his wife, his three children, seven of his grandchildren, and three of his great-grandchildren. All of his other heirs are excluded from any consideration in the distribution of this residuary estate. We also find that these same fourteen legatees take by specific devises practically all the other estate of the testator, the other heirs getting only the nominal sum of one dollar apiece. By the eleventh clause of the will the testator informs us in substance that these fourteen legatees are to have an equal division of this residuary estate; and by the other clauses of the will we see that he has made an equal distribution, or practically so, of all his other property by specific devises, giving slightly the best of this division to those whom by the twelfth clause he expressly declares nearest and dearest to him. The twelfth clause of this will directs that these legatees are to be permitted to select, in person or by guardian, the amount of notes and mortgages due them in the order in which the legacies are given. By this expression he calls our special attention to the fact that he has named his legatees in a certain order and that they are to be favored by being permitted to select their property in the order they are named. This indicates clearly who were first in his thoughts, and leads us to expect that they will be at least treated as well as the persons who are to take the last choice. But this order in which his devises are given suggests also his plan of division and what he meant by equal division. Note how he makes it. He divides it into practically six equal parts, in a certain order, giving

first choice to the widow, the next two to his minor sons, the next to his oldest son, and the last two to his selected representatives of his deceased daughter, Nancy, and son, Henry, the last choice falling to the set of heirs containing the great-grandchildren, or those most remote from him in kinship. His plan was to treat his children, living and dead, except Thomas F. Baker, with practically equal consideration, giving the children of his second wife a little the best of it, and to give his widow an equal share with them, as manifested by his own division in the specific devises. The little deviations that he made by recognizing H. T. Barrett and John C. Barrett and Allen Baker as favorite grandsons in no way militate against the idea that he had in mind a *per stirpes* distribution. Each class of these deceased children's descendants when the legacies are summed up get the same sum, $5,000, in notes and mortgages. It must be remembered that this residuary sum of $15,000 is personalty, notes and mortgages, and that a statutory division under the statute of descent would give to the widow one-third of this residuary sum. So it is clear that the testator had no such division in his mind. He only wanted the widow to have an equal share. He does not say in specific words what he considered an equal division; but impliedly he says, "divide it equally according to my notions of equality as heretofore expressed." Apparently wherever he desired to favor one child or grandchild more than another he took the pains to do so in plain specific words. As to the residue it is to be divided equally—without discrimination. This idea that he had his legatees in mind as a class is further emphasized in the eleventh clause of the will itself by the language of the exception·therein, to wit: "except those that I have bequeathed one dollar each, namely: Julia Ramage's and Thos. F. Baker's children, legatees herein before named."

Now if we divide this residuary estate *per stirpes* as contended by appellants the plan of the testator

in the matter of dividing his property will be maintained, and it will in every way be in harmony with his expressed intention and desires. The widow will then receive a life estate in real estate worth $3,500 and $4,500 in notes and mortgages, and the household and kitchen furniture, stock, grain and farming implements, in all of the probable cash value of $7,500; each of the two minor sons will receive bank stock and notes of the value of $7,500 and the remainder in fee of the farm; Charles C. Baker, the other son, and the said legatees, heirs, of Nancy Barrett and Henry Baker, deceased, will receive $7,500 each as a class. In other words it will make a practically equal division of the estate, and still make good the idea of the testator expressed in his will that his wife and two minor sons are first in thought and therefore slightly favored by him. A division *per capita* reduces the widow's share and the share of all the three sons $1,500 and would give to the widow and three sons practically $6,000 a piece, $7,000 to the two children of Nancy Barrett, and $13,000 to the heirs of Henry Baker, deceased, or more than twice the amount given to his widow or Charles C. Baker, who are the chosen executors of the deceased who are to serve without compensation by express provision of his will. It will be noted also that by this *per capita* distribution the heirs of Henry Baker, deceased, would take four-sevenths of the residuary estate or more than the combined shares therein of all the other legatees. So the remote heirs of the testator would take the largest shares in the testator's estate, and the common idea of equality and justice would be overturned, and the expressed will of the testator defeated, as it seems to us, by this mode of division.

There are other reasons from a legal standpoint why the division should be *per stirpes*. Words indicating equality of division, such as "to be divided equally," etc., do not necessarily mean a *per capita* equality of division, but they apply just as readily and appropriately to a *per stirpes* equality. Pitney v.

Brown, 44 Ill. 366, and authorities first cited herein.

Words of doubtful meaning should be construed so as to harmonize with the plan or scheme of the testator; and where they are susceptible of two constructions, that construction should be adopted which is most favorable to the heir nearest in relationship to the testator, and so as not to result in discrimination. Young v. Harkleroad, 166 Ill. 318; Wardner v. Seventh Day Baptists, 232 Ill. 606; Am. and Eng. Ency., 30 Vol., 666, 667, 668.

Words occurring more than once in a will are presumed to be used always in the same sense when the context does not show a contrary intention. 30 Am. and Eng. Ency. 671. The identical same phrase "to be equally divided," found in the eleventh clause, and which is the real subject of contention in this case, is found in the ninth clause of this will where it is clearly and expressly defined by the testator to mean a division *per stirpes*.

For the foregoing reasons we conclude that the learned trial judge erred in his holding that the division of the residuary estate should be divided *per capita;* that the said estate should be divided into six equal parts giving to the widow and the three sons of the testator one each of said parts; to H. T. Barrett and John C. Barrett each a one-twelfth of said estate; and to every one of the five children of Henry Baker, deceased, or their heirs, one-thirty-sixth part thereof; and to every one of the grandchildren of Henry Baker, one one-hundred-and-eighth thereof.

The decree of the court, ordering the executors to pay the guardians *ad litem* fees of $15 and $100, respectively, is right and warranted under the law. The decree of the lower court is therefore reversed in part and affirmed in part, and the cause is remanded with directions that a decree be rendered in conformity with the views herein expressed.

*Reversed in part, affirmed in part and remanded with directions.*