(No. 15356.—Decree affirmed.)

EMERSON E. CLARK, Appellee, vs. COSETTE TODD et al.—
(IDA MURRAY et al. Appellants.)

*Opinion filed December 19, 1923.*

1. WILLS—*general rule as to when heirs will take per capita.*
Where the word "heirs" is used in a devise to describe the persons who are to take and not to fix the interest which will vest in each person by virtue of his or her heirship, the persons described will take *per capita.*

2. SAME—*codicil will not be construed to change will except in case of clear revocation.* The plain provisions of a will cannot be taken away or modified by doubtful expressions in a codicil, and where the codicil contains no clause of revocation but contains specific clauses of ratification, the provisions of the will are to be disturbed only so far as is necessary to give effect to the provisions of the codicil, and in other respects the will and codicil are to be construed together.

3. SAME—*a specific alteration in codicil negatives intention to make any other change in will.* A specific change of disposition made by a codicil negatives an intention to make any other change in the will.

4. SAME—*a devise to "heirs-at-law" simpliciter is governed by Statute of Descent.* As a general rule, when a devise is made to heirs-at-law *simpliciter* the persons to take and the proportions must be determined by the Statute of Descent.

5. SAME—*when a devise to heirs-at-law will be apportioned per stirpes and not per capita.* Although a testatrix adds a codicil to her will for the express purpose of excluding by name two persons who would otherwise take under a devise in the will to her "heirs-at-law" *simpliciter,* yet if there are no words in the will or any of its codicils to indicate an equality of distribution, the devisees, with the exceptions named in the codicil, will take *per stirpes* and not *per capita,* as the presumption is that the testatrix intended her property to be distributed in accordance with the laws of descent, giving the greater portion to those who are nearest of kin to the testator.

CARTER, J., dissenting.

APPEAL from the Circuit Court of Logan county; the Hon. FRANK LINDLEY, Judge, presiding.

KEIFER & KEIFER, BOWMAN & BOWMAN, and LYMAN S. MANGAS, guardian *ad litem,* for appellants.

BEVAN & BEVAN, and MORRISSEY, SULLIVAN & RUST, for appellee.

Mr. JUSTICE THOMPSON delivered the opinion of the court:

Anna E. Yeazell died testate at her home in Springfield, Ohio, April 22, 1920, possessed of lands in Ohio and Illinois which she had inherited from her father. July 5, 1888, she made her will, giving to her husband all her personal property and a life estate in all her real property, "with remainder over, at the death of said husband, to my heirs-at-law." Her nearest relatives then living were a brother and two sisters, who in the event of her death, leaving out of consideration her husband, would have been her heirs-at-law. One of the sisters, Mary C. Pratt, died leaving eight children surviving her: Charles, Irene, Ida, Josephine, John, Norma, Blanche and Mabel. The other sister, Martha Calvert, died leaving four children surviving her: Cosette, Bertha, Robert and Ralph. The brother, James Clark, died in 1906, leaving surviving him Emerson E. Clark, his only son. Thereafter, October 3, 1910, testatrix made a codicil to her will, the first clause of which reads as follows:

"1. I direct that in the ascertainment of my 'heirs-at-law,' wherever and whenever the same be necessary, either under said last will and testament or under this codicil thereto, there be excluded therefrom my nephew Charles E. Pratt, now of Chicago, Illinois, son of my deceased sister, Mary C. Pratt, and also my grand-nephew William Atkinson, of Plain City, Ohio, son of my niece Mabel Atkinson, deceased, who was a daughter of my said deceased sister, Mary C. Pratt; meaning thereby that the class 'my' heirs-at-law,' as used in my said last will and testament, shall be

made up and constituted of those persons who would be such 'heirs-at-law' according to the laws of such State as would have jurisdiction in the premises, omitting and exsent cluding therefrom the said Charles E. Pratt and William Atkinson, the same as if in said last will and testament I had specifically named as my said residuary legatees and devisees all of the persons who would be such 'heirs-at-law' according to the laws of such State, other than the said Charles E. Pratt and William Atkinson; so as that, for illustration, if my said heirs-at-law, including said Pratt and Atkinson, should be ten in number, by such omission of the said Pratt and Atkinson there shall be but eight of my said 'heirs-at-law' to take as my said residuary legatees and devisees, I hereby directing and declaring that the said Charles E. Pratt and William Atkinson are in nowise to take, either *per stirpes* or *per capita,* any of my estate and property as of the number of my 'heirs-at-law' constituting my residuary legatees or devisees."

May 26, 1919, her husband died, and two months later she executed a second codicil to her will. By the third clause of this codicil she bequeathed to the heirs-at-law of her deceased husband $12,000, specifically providing that they were to take *per stirpes* and not *per capita*. She stated that she made this bequest for the purpose of restoring to his family money received through her husband from one of her husband's brothers. By the fourth clause she made this provision:

"4. My husband, William M. Yeazell, having predeceased me, I give, bequeath and devise all of the residue and remainder of my estate, both personal and real and wheresoever situate, including all of my lands and property in Logan county, Illinois, and also including any legacy or devise lapsed from any cause, absolutely and in fee simple to my heirs-at-law as they are defined in the first codicil, dated October 3, A. D. 1910, to my said last will and testament."

Her nephew Emerson E. Clark is named executor. After the drafting of the first codicil and before the drafting of the second, one of her nephews, John Pratt, died leaving three children surviving him, and one of these children died leaving two children surviving. Irene Pratt Gilroy died leaving no descendants. When testatrix died she left surviving her as her heirs-at-law one nephew, son of the deceased brother; two nephews and two nieces, children of a deceased sister; four nieces, one nephew, three grand-nephews, a great-grand-niece and a great-grand-nephew, descendants of another deceased sister.

The will and codicils were admitted to probate in Clark county, Ohio, and Emerson E. Clark qualified as executor. Clark filed his bill in the circuit court of Logan county praying that the 830 acres of Logan county lands be partitioned among the heirs-at-law, giving to him one-third; to Cosette Todd, Bertha Shelton, Robert Calvert and Ralph Calvert each one-twelfth; to Ida Murray, Josephine Flynn, Blanche Sharp and Norma Pratt each one-fifteenth; to Eveleigh Pratt and Emerson Pratt each one-forty-fifth; and to Mary Louise Pratt and Wyatt E. Pratt each one-ninetieth. Appellants filed an answer, stating that at the time of making the first codicil, testatrix had living, exclusive of Charles E. Pratt and William Atkinson, ten nephews and nieces, and alleging that her real estate was by said will and codicils devised in fee simple in equal shares to her heirs-at-law the same as if each had been specifically named as a residuary devisee. The chancellor held that the lands passed under the will and codicils to the heirs-at-law *per stirpes* and not *per capita*, and granted the prayer of the bill. This appeal followed.

Appellants argue with much force that testatrix intended by the codicils to her will to divide her estate equally among her heirs-at-law. Their contentions are supported by the changed conditions which prompted the execution of the codicils and by the language used in the second codicil.

When the will was made testatrix had a brother and two sisters, and had they survived her and her husband her property would have been equally divided among them. When testatrix made the first codicil, which was twenty-two years after she executed the will, the brother and two sisters were dead and she had as her nearest relatives eleven nephews and nieces and one grand-nephew. By this codicil she left her diamonds to six nieces, naming them, and she excluded from participation in the distribution of her estate her nephew Charles E. Pratt and her grand-nephew William Atkinson. In speaking of those who were to take she used this language: "Meaning thereby that the class 'my heirs-at-law,' as used in my said last will and testament, shall be made up and constituted of those persons who would be such 'heirs-at-law' according to the laws of such State as would have jurisdiction in the premises, omitting and excluding therefrom the said Charles E. Pratt and William Atkinson, the same as if in said last will and testament I had specifically named as my said residuary legatees and devisees all of the persons who would be such heirs-at-law according to the laws of such State, other than the said Charles E. Pratt and William Atkinson." If the testatrix in this codicil used the word "heirs" to describe the persons who were to take, and not to fix the interest which would vest in each person by virtue of his or her heirship, then the persons described would take *per capita*. On the other hand, appellee contends just as forcibly that the only purpose of clause 1 of the first codicil was to exclude Pratt and Atkinson and to cause the property to pass to the heirs of testatrix the same as if Pratt and Atkinson had not been born. If this was the only purpose, the scrivener could by the use of a single sentence have made this purpose clear. Where, as in this case, the scrivener by the use of many unnecessary and ambiguous words has successfully concealed the intent of the testatrix so that it is not possible to determine to a certainty what was intended, there are

certain definite and well established rules which are applied to aid the courts in reaching a correct conclusion.

Where, as here, a codicil is appended to a will and does not contain a clause of revocation but contains specific clauses of ratification, the provisions of the will are to be disturbed only as far as is necessary to give effect to the provisions of the codicil, and in other respects such will and codicil are to be construed together. (*Meckel* v. *Johnson,* 231 Ill. 540; *Vestal* v. *Garrett,* 197 id. 398.) A codicil does not supersede a will but should be construed in harmony with it unless there is a clear revocation in the codicil of the provisions of the will. The plain provisions of the will cannot be taken away or modified by doubtful expressions contained in the codicil. (*Tucker* v. *Tucker,* 308 Ill. 371; *Alford* v. *Bennett,* 279 id. 375.) There was in the will a specific devise of the remainder in fee to the heirs-at-law of testatrix. We do not find in the codicil language which clearly and unequivocally expresses an intention of testatrix to revoke this provision of her will and cut down the interest of those nearest akin to her and make an equal distribution of her estate among her heirs-at-law regardless of the different degrees of consanguinity. There is no doubt that testatrix executed this first codicil to exclude from those who were to benefit by the distribution of her estate two who would otherwise have participated in the distribution. Where a specific change of disposition is made by a codicil it negatives an intention to make any other change in the will, and the determination expressed by the codicil to alter the will in a specific particular negatives an intention to alter it in other respects. (2 Schouler on Wills,—6th ed.—sec. 904.) She had lands in Ohio and in Illinois, and according to the language of the codicil she recognized that the shares of those who were to share in her bounty might under the laws of descent in the different States be different. If she had intended that all her kin should share equally she would have named them specif-

ically, so that they would have shared equally in all her property, wherever situated.

There are no words in the will or either of the codicils indicating equality of distribution. The devise is to her heirs-at-law. We must invoke the aid of the Statute of Descent to determine the persons who are to take, and when invoked for that purpose we must, in the absence of an intent expressed in the will, follow the provisions of the statute in determining the quantity the beneficiaries are to take. As a general rule, when gifts are made by will to heirs-at-law *simpliciter,* the persons to take and the proportions must be determined by the Statute of Descent. (*Richards* v. *Miller,* 62 Ill. 417; *Kelley* v. *Vigas,* 112 id. 242; *Welch* v. *Wheelock,* 242 id. 380.) Where, as in this case, it is doubtful who are to take under a designation such as "heirs-at-law," the presumption is that the testator intended that his property should be distributed in accordance with the laws of descent, and the will will be construed to favor those who are nearest of kin to the testator. *Dollander* v. *Dhaemers,* 297 Ill. 274; Annotation, 16 A. L. R. 15-152; *Conklin* v. *Davis,* 63 Conn. 377, 28 Atl. 537; *Dunlap's Appeal,* 116 Pa. St. 500, 9 Atl. 936; *Henry* v. *Thomas,* 118 Ind. 23, 20 N. E. 519.

The decree of the circuit court is in accordance with the settled law of this State, and it is therefore affirmed.

*Decree affirmed.*

Mr. JUSTICE CARTER, dissenting:

I do not agree with the reasoning or the conclusion in the foregoing opinion. The original will gave testatrix's property to her husband for life, with power to sell and re-purchase or account to the "heirs-at-law" for the proceeds, "with remainder over, at the death of said husband, to my heirs-at-law." There is no further wording in the original will to throw light on the testatrix's meaning as to the quoted phrases, and there was apparently no need for fur-

ther interpretation, as her nearest kin were two sisters and a brother and there was no inequality of groups. Subsequent to the making of that will, however, the brother and sisters died, one leaving one child, another leaving four children and another leaving eight, and there was also a descendant of a deceased child of one of the sisters, so that an entirely new condition existed when she made her first codicil, twenty-two years after the will was executed. Instead of there being a husband, brother and two sisters, there were now the husband and an unequal number of nephews and nieces and a grand-nephew as children or descendants of the brother and sisters, so that when she drafted the codicil to meet the new condition she knew that the nephews and nieces and the grand-nephew were, or would be, her "heirs-at-law" if surviving, and that the same term could be applicable and express her wishes in the codicil without re-writing the will, (the substance of much of which she wished to retain,) if she explained how her "heirs-at-law" were to be ascertained and considered. She was especially desirous that Charles E. Pratt, a nephew, and William Atkinson, a grand-nephew, should take nothing. But this was not the sole end of clause 1 of the first codicil, for, as the majority opinion holds and as contended by the appellee, a single sentence could have made that intention clear; and this would be true whether the desire was to classify the heirs *per stirpes* or have them take *per capita*. But she desired to explain that she meant more than simply the elimination of these two persons as if they had never been born. She wishes to show how such elimination shall affect those remaining, and in so doing it will be shown how the others are to take the legacies provided for them. She made no reference to heirs, as a class, in the first will, because there was no inequality of groups, but at the time the first codicil was executed there was inequality of groups and need for "ascertainment of heirs-at-law," for the purpose, first, of excluding a nephew and grand-nephew; and

second, that to further express her meaning as to her heirs-at-law, "the class 'my heirs-at-law,' as used in my said last will and testament, shall be made up and constituted of those persons who would be such 'heirs-at-law' according to the laws" of two different States, so that the two should be excluded as if she had named them all individually, and the elimination of the two as individuals would have the effect of leaving those that remain as individuals, for, as stated in the illustration, "if my said heirs-at-law, including said Pratt and Atkinson, should be ten in number, by such omission of the said Pratt and Atkinson there shall be but eight of my said 'heirs-at-law' to take as my said residuary legatees." This wording indicates clearly that the testatrix wished to show the effect of the elimination upon those remaining, and it was just as clearly stated or illustrated that those that remained were to be treated as individuals as that those excluded were excluded as individuals rather than as representatives of the different groups. If it was not the intention to explain the effect of the exclusion of the two persons and the number of those remaining to take, on the basis above indicated, then the only other effect of such explanation and illustration is merely to state that if two are excluded from a number such as ten, it shall have the effect of leaving eight. This is a mathematical computation so simple that no explanation or illustration is necessary to further clarify it. What is obvious needs no explanation.

Nine years after making the first codicil, when the husband had died, the testatrix wished the proceeds of property which had been owned by him restored to the "Yeazell heirs" and have it distributed *per stirpes,* and it was there shown that the person who drew the codicil knew what language to use so as to clearly convey that intention. I think, taking the will as a whole and giving to the words used in the first codicil a logical meaning, that it is possible to determine what the testatrix intended. As stated in *Welch*

310—24

v. *Wheelock,* 242 Ill. 380, on page 385: "Cases on wills
may guide us to general rules of construction, but unless
a case cited be in every respect directly in point and agree
in every circumstance it will have little or no weight with
the courts, who always look upon the intention of the tes-
tator as the polar star to direct them in the construction
of wills." While it is necessary to refer to various authori-
ties and the rules of law therein laid down, it is particu-
larly necessary in this case to bear in mind the principle
stated in this quotation from *Welch* v. *Wheelock* in apply-
ing these various authorities. In 28 R. C. L. the author in
section 242, page 267, lays down the following rules of con-
struction that should be followed in construing wills: "A
devise to named individuals * * * requires a *per capita*
distribution. A devise to a class, such as 'all my nephews,'
and the like, likewise calls for a *per capita* distribution.
The addition of the words 'equally,' or 'share and share
alike,' tends to strengthen this conclusion. Where the word
'heirs' is used in the will as one of description and purchase,
it must be divided *per capita.*" These same rules are prac-
tically approved in 40 Cyc. 1490, and 2 Jarman on Wills,
(6th Am. ed.) chap. 30, sec. 12.

It has been held by this court that a will, if possible,
should be so construed as to give it effect without refer-
ence to the statute of descents and distributions, since the
testator or testatrix has in this respect full and ample au-
thority to direct the distribution of his or her property as
he or she desires. (*Richards* v. *Miller,* 62 Ill. 417; *Pit-
ney* v. *Brown,* 44 id. 363; Page on Wills,—1901 ed.—
sec. 554.) Where the will by explanation and illustration,
as contained in the first codicil, is susceptible of a reason-
able and logical interpretation, the court, in my judgment,
should attempt to carry out that intention, even if it results
in a *per capita* distribution.