First National Bank of Chicago et al., as Trustees Under the Last Will and Testament of Susannah Brown Miller, Deceased, Appellees, v. Anna B. Cherrier et al. (Louise Madsen et al.), Appellants.

Gen. No. 9,648.

Heard in this court at the May term, 1941. Opinion filed July 9, 1941.

CAMERON, HEATH & BURRY, of Chicago, for certain appellants; JOHN R. HEATH and RICHARD V. HENRY, JR., both of Chicago, of counsel.

WILLIAM T. KIRBY, of Waukegan, for certain other appellant; WILLIAM T. KIRBY, of counsel.

BERNARD M. DECKER, of Waukegan, for certain appellees; BERNARD M. DECKER, of counsel.

HENRY D. FISHER, of Waukegan, for certain other appellees; HENRY D. FISHER, of counsel.

BELL, BOYD & MARSHALL, of Chicago, for certain other appellees; THOMAS L. MARSHALL, of counsel.

MR. JUSTICE DOVE delivered the opinion of the court.

The question in this case is presented by an appeal from a decree of the circuit court of Lake county, construing the last will of Susannah Brown Miller, deceased, and holding that a one-half of the income from a trust created by said will shall be distributed per capita among the nieces and nephews of the testatrix, and per stirpes among the issue of any deceased niece or nephew. The appeal is by one of the nieces of the testatrix and her two children, who claim the distribution shall be entirely per stirpes.

The issue involves the construction of Clauses (H), (I) and (J) of the will. They read as follows:

"(H) The rest, residue and remainder of the net income of my trust estate shall be paid over by my Trustees in quarter-yearly installments as follows:

"(1) One-half (½) thereof to my brother, Joseph Henry Brown, of Little Rock, Arkansas, so long as he shall live, and upon his death, to pay said one-half (½) of said rest, residue and remainder of the net income to my nieces and nephews living at the respective dates provided for the distribution of income until the date of the distribution of principal hereinafter mentioned;

"(2) One-half (½) thereof to my sister, Anna B. Cherrier, of Los Angeles, California, so long as she shall live, and upon her death, to pay said one-half (½) of said rest, residue and remainder of the net income, to my nieces and nephews living at the respec-

tive dates provided for the distribution of income, until the date of the distribution of principal hereinafter mentioned, provided, however, that if Harry A. Cherrier survive my sister, Anna B. Cherrier, said Trustees shall pay out of said share of such net income, the sum of One Hundred Dollars ($100.00) per month to the said Harry A. Cherrier, on the first day of each month, so long as he shall live.

"(I) The date of distribution of the principal of my said trust estate shall be upon the death of the survivor of my brother and sister.

"(J) (The first paragraph of this clause is conditioned upon Harry B. Miller or Harry A. Cherrier, or both, surviving the brother and sister of the testatrix, and makes provision for them during their lives, with distribution of the balance of the principal. This paragraph has been rendered inoperative, they having predeceased the testatrix, and it is, therefore, omitted.)

"In the event that both Harry B. Miller and Harry A. Cherrier shall predecease either my brother or my sister, then upon the death of the survivor of my brother and sister, my Trustees shall divide the entire principal of my said trust estate into five (5) equal shares and distribute the said shares to the children of my brothers and sisters, such children taking by representation *per stirpes* and not *per capita.*

"In the event of the death of any of the children of my brothers or sisters, prior to the date of distribution of principal, leaving lawfully begotten issue him or her surviving, who shall be living at the date of distribution, such issue shall receive the share of the parent, taking by representation *per stirpes* and not *per capita.*

"In the event of the death of any of the children of my brothers or sisters prior to the date of distribution of principal, leaving no lawfully begotten issue him or her surviving who shall be living at the date of distribution, the share of such child or children shall be paid to his or her brothers or sisters, if any, then

living, or the lawfully begotten issue of any brother or sister who may have died; and in the event that such child or children shall have no brothers or sisters or no lawfully begotten issue of any brother or sister who may have died then living, such share shall be divided among the other beneficiaries according to the same ratio in which they are entitled to receive the principal of said trust estate.''

The testatrix executed her will on September 15, 1931, and died on October 17, 1938. She had nine brothers and sisters, four of whom predeceased her without leaving any issue. Her remaining brothers and sisters were Joseph Henry Brown, Anna B. Cherrier, Margaret June, Jane Knox, and John Thomas Brown. All of them, except Joseph Henry Brown and Anna B. Cherrier, died before the will was executed. Joseph Henry Brown died on September 28, 1939, leaving no issue. Anna B. Cherrier is still living. She had one daughter, Ruth Peyton, one of the appellees. Margaret June had three children: (1) Marjorie Van Tassell, who was alive when the complaint was filed, but died in 1940, leaving no issue; (2) Morris B. June, now living; (3) Raymond June, who predeceased the testatrix, leaving two children, Norman Henry June and Dorothy June, who are still living. John Thomas Brown left three children, Grace Clark, Suzanne Rich and Aileen Mogge, all now living; Jane Knox left surviving her one daughter, Louise Madsen, who is still living. She has two children, Keith Knox Madsen and Earlene Louise Madsen. The last three named are the appellants mentioned above.

None of the parties question the holding that Norman B. June and Dorothy June are entitled to a share of the income per stirpes. It is conceded by all the parties that the ultimate distribution of the principal is to be per stirpes.

Under the claim that the entire income should be distributed per stirpes, appellants contend that Ruth Peyton is not entitled to any share therein during the

lifetime of her mother on the ground that stirpital distribution is based upon representation, and permitting her to share is inconsistent with the general scheme of the testatrix. Eliminating her from their calculations, they claim Louise Madsen is entitled to one-third of the income instead of one-eighth as provided by the decree, with adjustments in the other shares conformable to a stirpital distribution.

Appellants claim the provisions of the will relating to distribution of income are ambiguous. While we do not think the claim could be upheld as to any single clause when isolated, we are of the opinion that under the conflicting claims of the parties, allegedly supported by authorities cited, the question of how the clauses when considered together, and the will as a whole, should be interpreted, was sufficient to give the court jurisdiction in the premises.

We cannot agree with the contention of appellants that the courts of this State are committed to the doctrine that where a will is ambiguous distribution is to be held stirpital wherever possible. They cite no case, and we know of none, which so holds. It has been repeatedly held that owing to the fact that wills are seldom worded alike, decisions in particular cases are of little value as precedents, and each case must be decided upon its own peculiar facts and circumstances. (*Whittington v. Hunt,* 296 Ill. 133; *Wallace v. Noland,* 246 Ill. 535.) The decisions where distribution has been held to be stirpital may be roughly classed into two groups. First, where the court determined the testator so intended, as disclosed by the language of the particular will, either by itself, or in connection with other controlling facts and circumstances. None of these decisions are predicated upon any doctrine that the court will hold a distribution to be stirpital wherever possible, but they are based upon the universal rule that where the testator's intention can be determined from the will, and is not in violation of

some positive rule of law or public policy, it will be given effect. (*Dahmer v. Wensler,* 350 Ill. 23; *McCormick v. Hall,* 337 Ill. 232.) The second class of cases is where the intention of the testator was not clear or the gift was to heirs or descendants as a class. Holdings in those cases are based upon the presumption that the testator intended his property to go in accordance with the statute of descent. A pertinent statement is found in 16 A. L. R. 16, where the annotators say: "It is a common remark that the decisions on the question as to when beneficiaries under a will are to take per capita and when per stirpes are in hopeless confusion. Analysis and comparison, however, show that their diversity of result is due not to a difference as to the principles of construction, but as to the amount of evidence of a contrary intent which will overcome the general presumption that where the proportions in which the beneficiaries are to take are not specified, they take per capita." All of the pronouncements of our Supreme Court demonstrate that the fixed policy in this State is not to follow any arbitrary rule of construction, but whenever the intention of the testator can be ascertained with reasonable certainty, that intention must be effectuated.

Among the cases relied upon by appellants are *Wyeth v. Crane,* 342 Ill. 545, and *Poehlman v. Leinweber,* 288 Ill. 58, where the gifts were to descendants; *Kelley v. Vigas,* 112 Ill. 242; *Thomas v. Miller,* 161 Ill. 60; *Richards v. Miller,* 62 Ill. 417; *Welch v. Wheelock,* 242 Ill. 380 and *Clark v. Todd,* 310 Ill. 361, in each of which the gift was to heirs or heirs-at-law. A significant statement is found in *Clark v. Todd, supra,* as follows: "As a general rule, when gifts are made by will to heirs-at-law simpliciter, the persons to take and the proportions must be determined by the Statute of Descent." (Citing *Richards v. Miller, Kelley v. Vigas* and *Welch v. Wheelock, supra.*) It is to be observed that it is required not only to determine proportions

but to determine who are to take, which might include descendants or heirs-at-law of several different degrees of relationship. It is also to be noted that the statute of descent, which results in stirpital distribution, is applied because the testator has not designated the persons who are to take otherwise than as prescribed by the statute. Manifestly, there is no occasion for applying that doctrine where, as here, the persons who are to take are specifically designated as nieces and nephews. It follows that the cases cited have no bearing upon the question at issue.

In *Pitney v. Brown*, 44 Ill. 363, a will directed the conversion of the estate into money and provided for certain legacies and an annuity to the widow. It then provided: "The balance remaining of said fund I hereby direct shall be equally divided between the children of my late brother, Mahlon Pitney, and my brother-in-law, William H. Brown . . . a large portion of my property having been received through his father and the father of my late wife, Betsey H. Pitney." There were three children of Mahlon Pitney. The court held the four legatees took per capita, basing its holding upon the rule announced in 2 Jarman on Wills, p. 111, and a long line of decisions upholding the rule, which was quoted in the opinion as follows: "When a legacy is to the children of several persons they take per capita and not per stirpes. The same rule applies when a bequest is made to a person standing in a certain relation to the testator and the children of another person standing in the same relation, as to my brother A and the children of my brother B, in which case A takes only a share equal to that of the children of B." A factor in that case to be hereinafter noticed was that the general rule applied unless a contrary intention was indicated by the will. It was contended that a contrary intention was indicated by the fact that a large portion of the estate came from Brown's father, but the court said it could only

regard this clause as giving a reason for making Brown a legatee at all, and not as indicating the extent of the legacy, inasmuch as Brown would not have taken anything at all if there had been no will.

In *Richards v. Miller, supra,* where the gift was to heirs-at-law, the court points out that the gift in *Pitney v. Brown* was not a gift to a class to be ascertained by the statute, but was a gift to certain persons, as if they were individually named. *Kelley v. Vigas* and *Welch v. Wheelock, supra,* point out the same distinction. In *Northern Trust Co. v. Wheeler,* 345 Ill. 182, the court mentions that *Kelley v. Vigas* distinguished *Richards v. Miller* from *Pitney v. Brown,* and says that they have been repeatedly cited and followed. This refutes the contention of appellants that the earlier cases have been nullified by later decisions. Another recent case that supports the claim of appellees is *Carlin v. Helm,* 331 Ill. 213, where the gift was "to my lawful heirs to be divided equally among them . . . I mean by my lawful heirs, my daughter Aura F. Hecox and her children, and grandson Harry B. Helm." In holding the distribution was to be per capita, the court said: "All designated devisees are in being. The children of Mrs. Hecox cannot be considered as taking per stirpes because they take in their own right directly by the will and not by representation." The statement as to how the children took is squarely in point here as to the nieces and nephews of the testatrix.

In *McCartney v. Osburn,* 118 Ill. 403, the will gave the testator's daughter Henrietta certain property of the value of $30,000 and to his grandchild, Harry G. McCartney, the sum of $30,000 to be paid to him when he reached the age of twenty-one years. The remainder of the estate was to be divided equally between the heirs of Henrietta that might be living at the time of distribution, and Harry G. McCartney. The time of distribution was when the youngest child of Henrietta

became twenty-one years of age. In holding the distribution should be per capita the court held there was nothing in the will which indicated a contrary intention. It was so held even though the other gifts to Henrietta and the grandson were equal. In the course of the opinion the court said: "It is conceded, and such is unquestionably the law, that if a testamentary gift be made to one person and the children of another person, as, for instance to A, and the children of B, A and the children of B, in such case, in the absence of a contrary intention, will take per capita and not per stirpes. (2 Jarman on Wills, 756.) Yet it is equally well settled, that the opposite construction will prevail when the intention to that effect can be gathered from the context,—or, in the somewhat quaint language of Jarman,—'this mode of construction will yield to a very faint glimpse of a different intention in the context. id. 757.'" The same doctrine appears in *Welch v. Wheelock, supra.*

Appellants also rely upon the cases hereinafter discussed. In *Dollander v. Dhaemers,* 297 Ill. 274, the will provided, after a life estate to the testator's widow, that upon her death or remarriage, all the property should be vested in the testator's named children, and the children of a deceased daughter share and share alike. The only question was whether the grandchildren took per capita or per stirpes. The court held that under the wording of the will the grandchildren were to be considered as a class and should take per stirpes and not per capita. The opinion quotes Jarman's rule and his statement that the rule will yield to a faint glimpse of a contrary intention. It mentions the fact that the decisions in *Kelley v. Vigas; McCartney v. Osburn; Welch v. Wheelock, supra,* and *Straw v. Barnes,* 250 Ill. 481, all indicate that the courts generally will depart from the rule laid down by Jarman if there is the faintest intention to show that the class,—in that case the grandchildren

—might be considered as taking per stirpes rather than per capita; and says that where there is an ambiguity in a will, unless there is a manifest intention to the contrary, the presumption that the testator intended that his property should go in accordance with the laws of descent and distribution will be applied as an aid in construing the will. The opinion quotes *Ferrer v. Pyne,* 81 N. Y. 281, as follows: "He designates the children of Irene as a class and not as individuals, remembering them not in their own persons but as representatives of their parent and substitutes them in her place. We are unable to discover any intent to bestow upon them any greater or more numerous marks of affection than their parent would, if living, have received," and proceeds: "The reasoning of this opinion on this point is quoted with approval in the note to *Perdue v. Starkey's Heirs, supra."* (Ann. Cas. 1916 C (Va.) 409.) It cannot be doubted that the basis of the holding in *Dollander v. Dhaemers, supra,* is that the testator intended the grandchildren to take the share of their deceased parent by representation. In the case at bar there is no question whether the issue of a deceased niece or nephew take per capita or per stirpes. The parties concede that they take per stirpes. In *Dollander v. Dhaemers, supra,* there was no question as to how the children should take. Aside from a recognition of Jarman's rule and the exception thereto, there is nothing in the case that is applicable here.

In *Whittaker v. Porter,* 321 Ill. 368, two wills, substantially alike, bequeathed income and devised property equally to two daughters for life and after their death to their children to be shared equally. One daughter had six children and the other had two. The court held that the two daughters took as tenants in common and that after their death the children of each daughter took the remainder in fee after the particular estate to each daughter. The language of the

will clearly indicated the property should go, one-half to one daughter for life and then to her children, and the other half to the other daughter for life and then to her children. That case has no application here.

In *Fussey v. White,* 113 Ill. 637, the will expressly provided for a division in halves between the children of two life tenants who were children of the testator. The question in that case was whether the gift to one set of the grandchildren was postponed until the death of both life tenants and the court held it was not postponed. How it is persuasive here is not apparent.

In *Palmer v. Jones,* 299 Ill. 263, there was a devise of real estate to life tenants with a provision that at their death the property should be divided equally between the testator's sister and the surviving children of her brother. The personal property was to be divided equally between the surviving children of the brother and the surviving children of the sister. Following *Dollander v. Dhaemers, supra,* it was held the children of the deceased brother were to be considered as a class and to take the real estate equally per stirpes with the testator's sister. In that case the will showed the testator's intention was to divide the property in halves.

In *Beal v. Higgins,* 303 Ill. 370, the gift was "to my son William Everett Higgins, to my daughter Myrtle I. Higgins and the children of my daughter-in-law, Maggie Higgins, share and share alike." The court held the children of the daughter-in-law took per stirpes. There was a like holding in *Dahmer v. Wengler,* 350 Ill. 23, where the will gave the residue of the estate to the children of John Dahmer and Charles Wensler and Henry Wensler in equal parts, and the first two named were dead when the will was executed. None of those cases furnishes an analogy to the case at bar.

The claim that the gift in this case is not simpliciter we regard as of no importance. The controversial gifts in *McCartney v. Osburn, supra,* and in *Beall v. Beall,* 331 Ill. 28, were not of that character, yet the court held the parties took per capita.

That the courts of this State will always give effect to the intention of the testator, notwithstanding rules of construction on the question of per capita or per stirpes distribution, is demonstrated in the following cases: In the *Dollander* case, *supra,* the court said: "When the bequest is to an individual or several individuals, and to others as a class, the latter generally take per stirpes; but this rule yields when the testator used language indicating an intention that the members of a class should share equally with the named individuals." In *Northern Trust Co. v. Wheeler, supra,* it is said: "The Illinois law favors a construction of a devise to descendants as will cause the division among descendants per stirpes and not per capita, but it is the intention of the testator which must govern." To the same effect is *Baker v. Baker,* 152 Ill. App. 620.

Inasmuch as the law in this State is that Jarman's per capita rule will prevail unless there is a "faint glimpse" of a different intention in the context, it is unnecessary to discuss decisions in other jurisdictions, and the issue resolves itself into a question of the intention of the testatrix. Appellants claim that because the will provides for a stirpital distribution of the principal, that circumstance indicates the testatrix intended there shall be a like distribution of the income. In our opinion the language of Clause (J) so carefully discriminates from the language of Clause (H) as to show clearly and unequivocally that the testatrix intended the distribution under Clause (J) to be on a different basis than that in Clause (H). The use of the technical language clearly demonstrates she

knew the meaning of distribution per stirpes and employed it for the purpose of showing that intention as to the principal of the trust. The claim that the principle of distribution was that of equality between brothers and sisters is without foundation. There is no such element in Clause (H). The families of deceased brothers and sisters were ignored and the income was divided equally between the surviving brother and sister; and after the death of one until the death of both, the nieces and nephews are to receive the half which previously went to the deceased brother or sister. No intention appears from the provisions of the will of testatrix to provide equality among her brothers and sisters or their families. The fallacy of the contention of appellants for a stirpital distribution is further indicated by their claim that Ruth Peyton is not entitled to share in the income during her mother's lifetime. Of course, this would be a necessary consequence if their claim is upheld that the income is to be distributed per stirpes, but the testatrix made no such exception either expressly or by implication. On the contrary, she included all her nieces and nephews without distinction as to whether their parents were living or dead, and she knew that Ruth Peyton's mother was living. Furthermore, if Anna B. Cherrier had died before Joseph Henry Brown, appellants' argument would obviously fail. They lose sight of the fact that the beneficiaries, as respects nieces and nephews, are the same in either case. These facts alone are sufficient to show the testatrix had no intention that the income should be distributed per stirpes. On this question, the holding in *Pitney v. Brown, supra,* is to be noticed, where it was contended the fact that the testator had received a large part of his property through the father of his brother-in-law indicated an intention for a stirpital distribution among the other legatees, but the court held it could only regard the clause as furnishing a

reason for including him at all. So too, in *McCartney v. Osburn, supra,* the gift of the residue was held to be per capita, although the other gifts to the daughter and grandson were equal. We are of the opinion that the facts in those cases were as strong a circumstance as the mere fact that the testatrix in the case at bar provided for a stirpital distribution of the principal. In addition to the foregoing reasons, it is apparent that to give Louise Madsen one-third of the income, leave Ruth Peyton entirely out, give the nephew Morris B. June one-sixth, and the other three nieces one-ninth each, which would be the result of a stirpital distribution of the income, would be so manifestly against the expressed intention of the testatrix as to need no further discussion. There is nothing in the will or the testimony to indicate that she had any such intention, but on the contrary, all the facts and circumstances indicate she intended the income to be distributed per capita. Under these conditions we do not consider it is necessary or desirable to analyze cases from other jurisdictions involving different factual situations. Nor do we agree with the claim that the absence of such words as "equally," "share and share alike" or words of like import tends to show an intention for stirpital distribution of the income. While such words are frequently held to indicate an intention requiring per capita distribution, no case is cited holding that the absence of such words tends to have a contrary effect.

We are of the opinion that there is not only no "faint glimpse" of an intention to prescribe stirpital distribution of income among the nieces and nephews, but the will clearly shows her intention that it shall be per capita. The general rule accords with that intention. She had the right to so provide and the courts have no power to change her will or make a new one for her. The decree was correct and is affirmed.

*Decree affirmed.*